JEANNIE WINTHROP, a Widow, v. JOHN G. CARINHAS and MANUEL JESUS CARINHAS, Individually and Doing Business as Independence Fish Company.

195 So. 399

Division B

Opinion Filed April 9, 1940

*Charles Cook Howell, Charles Cook Howell, Jr.,* and *J. S. Harrison,* for Plaintiff in Error;

*Marks, Marks, Holt, Gray & Yates,* for Defendants in Error.

WHITFIELD, P. J.—Writ of error was taken to a judgment for defendants in an action for damages for personal injuries received by a guest passenger in an automobile.

In the first count of the declaration it is alleged that on November 21, 1937, the plaintiff was a guest passenger in a motor vehicle which was being driven and operated by the defendants across the St. Johns River Bridge, a public

highway, in Jacksonville, Florida; that said motor vehicle was driven and operated carelessly, recklessly and with gross negligence, and with a reckless disregard for the safety of the plaintiff, at a rate of speed greater than was reasonable and proper, so as to endanger the life and limb of the plaintiff and other persons using the highway, so that thereby and on account thereof said motor vehicle ran into, upon and against, and collided with a certain device or appliance attached to and projecting from and above · the floor of said bridge, and was suddenly and violently thrown out of its forward course and ·its line of travel, and was overturned, thereby the plaintiff was injured. That her injuries were caused by the gross negligence of the defendants in the operation of said vehicle. Damages in $25,000.00 were claimed.

In the second count it is alleged that the motor vehicle was owned by the defendants and with their knowledge and consent was being driven and operated as alleged and with resulting injuries as alleged in the first count. A bill of particulars listed $625.00 expenses incurred and pecuniary losses sustained by plaintiff as alleged. Trial was had on a plea of not guilty. Verdict for the defendants was returned and judgment entered thereon for the defendants. A new trial was denied.

It appears from the evidence that the driver of the automobile was acquainted with the bridge; when he was approaching the bridge at about 9 P. M. he was going at a rate of "about 30 to 40 miles per hour;" the guest passenger called the driver's attention to the high speed; in mounting the incline at the south end of the bridge "going up hill slowed me up;" the top, level portion of the bridge was thoroughly well lighted .as the automobile approached it; lighted signs, "Slow" and "15 miles per hour," were in

front of the car and could have been seen by the driver; there are three traffic lanes on the bridge; one each for the north and south-bound traffic, and a passing lane between them; at the south end of the top, level portion of the bridge a "safety island" is provided for the safety of the ticket takers on the bridge; the "island" is along side the right-hand traffic lane of north-bound automobiles between the north lane and the middle one; the "island" is about eighteen inches or two feet wide, runs lengthwise the bridge approximately thirty-five feet; and is raised six or eight inches above the surface of the bridge; the "island" is constructed of concrete, and the south end of it is protected by a heavy iron device the same width as the "island" and is about three feet above the surface of the "island" and about three and a half feet above the surface of the bridge. A red 50-watt light bulb is attached to the top of the device and the light was burning; the automobile mounted the bridge in the right-hand or north-bound traffic lane; just before reaching the "safety island" on the bridge, the driver was blinded by the appearance of bright lights of an automobile coming south in the middle lane of the bridge; the car had a bridge tag and the driver did not have to stop to pay fare; the defendant's automobile struck the lighted iron or "gator head" alongside the north or right traffic lane with great force; the car was overturned on the bridge and the guest passenger was seriously injured.

Plaintiff in error presents the following questions:

"1. Is it gross negligence to operate an automobile under these facts and circumstances: At 9 P. M., on the brilliantly lighted St. Johns River Bridge at Jacksonville, approaching a red neon warning light reading 'SLOW,' and an illuminated sign admonishing '15 miles per hour,' the automobile, operated by a driver thoroughly familiar with

the locus, is driven at a speed of approximately 30 miles per hour in a straight line, with no deviation in its course, directly into an iron guard, at the end of a safety island, which stands 18 inches wide, and 3½ feet high, and bearing a 50-watt red, burning, electric light?

"2. Is the legal situation posited in the preceding question affected by the fact that the excuse given for such operation of the automobile was that suddenly the driver was confronted with a bright light which blinded him—it appearing without doubt that he could have seen the 'blinding light' several hundred feet before striking the obstacle, that he never slowed down, and never changed the course or direction of his car?

"3. In a personal injury action by a guest passenger in an automobile against the driver, is the following charge to the jury correct : 'Gross negligence may also be defined as that degree and quality of negligence that is characterized by an absence of any care on the part of the person having a duty to perform to avoid inflicting an injury upon another by recklessly or wantonly acting, or failing to act, to avoid such injury, evincing such an utter disregard of consequences as to suggest some degree of intent to cause such injury.' (Given at defendants' request.)

"4. In such an action, is the following charge to the jury correct? (Given by the court) : 'Gross negligence is negligence of a gross and flagrant character, evincing a reckless disregard of human life, or the safety of persons exposed to its dangerous effect; or that entire want of care which would raise the presumption of conscious indifference to consequences, or which shows wantonness or recklessness or a grossly careless disregard to the safety and welfare of the public, or, that reckless indifference to the

rights of others which is equivalent to an intentional violation of them.' "

To this charge the court added:

"Now right here, I will add this, so you will understand that definition. You will note from the definition of gross negligence as laid down by the Supreme Court of this State, and as I have just read it to you, that an actual intent to injure another person is not a necessary element of gross negligence, and neither is actual malice an element of gross negligence. Under the last clause of that definition there, it says, 'or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.' But that definition, as a whole, does not make actual intent or malice a part of gross negligence."

Section 1, Chapter 18033, Acts of 1937, is as follows:

"No person, transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought, provided that the question or issue of negligence, gross negligence, and wilful or wanton misconduct, and the question of assumed risk, shall in all such cases be solely for the jury. Provided that nothing in this Act shall apply to school children or other students being transported to or from schools or places of learning in this State."

It is difficult if not impossible to define degrees of negligence so that the distinctions made by classifications or

definitions would be even helpful in determining particular cases in litigation. Each case must be determined on its particular facts and circumstances and the law applicable thereto. As used in the provisions of Chapter 18033, Acts of 1937, in connection with the words, "or wilful and wanton conduct," the words "gross negligence" mean a greater degree of negligence than the lack of ordinary care under all the circumstances shown, judged by the usual standards of reasonably prudent conduct. "Wilful and wanton misconduct" as used in the statute means at least as great a degree of want of due care as "gross negligence," and may also imply a concurring mental process. See O'Reilly v. Sattler, 141 Fla. 770, 193 So. 817. 5 Am. Jur. 635; 96 A. L. R. 1479; 86 A. L. R. 1145; 74 A. L. R. 1198.

Under the statute, the plaintiff, who was a guest without compensation, cannot recover damages for personal injuries to herself caused by a collision of the motor vehicle in which she was riding with an obstacle beside the highway on a bridge, unless the injuries were proximately caused "by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle;" "and the issue of negligence, gross negligence, and wilful or wanton misconduct * * * shall in all cases be solely for the jury." If "gross negligence" is shown to have been the proximate cause of the injury there is liability even though "wilful and wanton misconduct" does not appear. There is no liability for damages under the statute if the degree of negligence is less than "gross negligence," which is greater degree of negligence than ordinary negligence or mere lack of the care ordinarily exercised by a prudent man.

The jury settled the issues upon the evidence, including the testimony as to the speed of the car and as to the driver

of the automobile being blinded by the bright lights of an approaching car just before the collision occurred.

As against the verdict, the evidence does not as a matter of law clearly show either "gross negligence," or "wilful and wanton misconduct" of the driver of the motor vehicle, within the intendments of the controlling statute.

Even if the charges complained of are not technically and entirely correct, yet when they are considered with *all the charges* given and the evidence as a whole, it does not appear that such charges could reasonably have misled or confused the jury or were otherwise prejudicial or harmful.

Under the statute the jury by their verdict determined the probative force of the evidence, subject only to permissible judicial review; and it does not clearly appear that the verdict rendered is contrary to law or is against the manifest weight of the evidence; nor does it appear that any applicable rule of law was violated in the proceedings or in the judgment rendered.

Affirmed.

CHAPMAN, J., concurs.

BROWN, J., concurs specially.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (concurring.)—There is a very enlightening discussion of this question of the different degrees or kinds of negligence in Florida Ry. & Nav. Co., v. Webster, 25 Fla. 394, 5 So. 714. See also the cases cited in the opinion in Cannon v. State, 91 Fla. 214, 107 So. 360, which I think support the above opinion.