**VIOLET ELDER ORME, a widow, v. RAYMOND O. BURR as Administrator Cum Testamento Annexo of the Estate of Andrew A. Crawford, Deceased.**

**ELSIE NICKLES BURCH, a widow, v. RAYMOND O. BURR, as Administrator Cum Testamento Annexo of the Estate of Andrew A. Crawford, Deceased.**

25 So. (2nd) 870  
May 3, 1946  
Rehearing denied May 22, 1946

January Term, 1946  
Division B

*Knight, Underwood & Cullen* and *H. H. Taylor,* for appellants.

*McKay, Dixon & DeJarnette,* for appellee.

BROWN, J.:

These two appeals are the outgrowth of litigation involving a most lamentable tragedy, in which four men lost their lives. In Coral Gables, Florida, at 2 o'clock A. M., March 4, 1941, a Mercury Coupe, 1941 model, owned and allegedly operated by Andrew A. Crawford, ran into a stout tamarind tree located in the parkway of Alhambra Circle, a two-way drive or street in said city, resulting in the death of the four occupants thereof: Andrew A. Crawford, who was killed instantly, and Friedhof Erickson, James Wood Burch, and Gardner P. Orme, who died within a few hours without regaining consciousness.

These two suits were instituted separately by Violet Elder Orme, a widow of Gardner P. Orme, deceased, and Elsie Nickles Burch, (now Mrs. Harold Day) the widow of James

Wood Burch, deceased, and were tried together, upon the same evidence, each of the declarations alleging that the deaths of each of the two husbands were occasioned by the wanton and reckless conduct and the gross negligence of Crawford. The defendant in each case was the administrator c. t. a. of the estate of Crawford. To these declarations the defendant entered pleas of not guilty. The two causes, thus consolidated and tried, resulted in verdicts adverse to the plaintiffs and the entry of final judgment in favor of the defendant.

Without any sustantial disagreement the testimony, all of which was introduced by the plaintiffs, showed the following to be the facts and circumstances surrounding the accident:

Crawford, Burch and Orme were residents of Washington, D. C. and were in Miami, Florida, attending the motor-boat regatta held early in 1941. Commander Erickson, a resident of Coral Gables, was also attending the regatta. During the evening of March 3, 1941, the above named four persons, together with others, were in attendance at the Rod and Reel Club in Miami Beach, Florida. Between 12:30 and 12.50 A.M., March 4, 1941, Crawford and Burch, in company with one Scott, left the said Club enroute to a downtown hotel in Miami where Scott left the party. Erickson, Orme, and one McKenzie left the said Rod and Reel Club in McKenzie's car and went to Tommy Hand's Bar in Coral Gables where they were later joined by Crawford and Burch who went there in Crawford's car. At about 2:00 A.M. Crawford stated he would take Erickson to his home (at number 739 Alhambra Circle, Coral Gables) and then would take Orme back to his hotel in Miami; whereupon, Crawford, Erickson, Burch, and Orme left Tommy Hand's Bar.

Landahl, a Coral Gables policeman, at about 2:00 o'clock A.M., was patrolling his beat at or near the corner of Alhambra Circle and Ponce de Leon Boulevard and noticed a car proceeding west on Alhambra Circle. The car crossed the Boulevard (a stop street) without stopping, and as it crossed he further noticed that it commenced to pick up speed and continued to pick up speed as it proceeded west and that it crossed Le Jeune Road (another stop street) without stop-

ping. A short distance beyond that crossing he lost sight of the car. It was a very still night, and Landahl testified that he heard the whirring of the motor and the whining of the tires as the car continued to pick up speed as it went west. Landahl heard the crash, although it was about half a mile away. It sounded like "the smack of a door."

Witness Miller, who was asleep in his house, in an upstairs bedroom, at 645 Alhambra Circle, was awakened by the crash, looked out the window, saw the smashed car, and telephoned the police. The telephone call was received by the police at 2:06 A.M., who responded very promptly.

The distance from Ponce de Leon Boulevard to the place of the crash was about four and a half blocks. Alhambra Circle is a two-way drive with a parkway down the center, with a 16 ft. wide pavement on either side, and at a point 125 feet east of the tamarind tree with which the car collided there was a slight curve to the north of about 27 degrees. At a point from 66 to 71 feet east from the tree there was a stationary reflector about 10 inches in circumference, set on a post about four and a half feet high, which reflected red light noticeable at a distance of about 300 feet to the east. The tamarind tree was on the parkway seven feet from the edge of the road, the diameter of the tree being slightly less than 12 inches. The roots extended 12 to 15 feet, of whorley grain structure. To strike the tree, the car had to deviate about 26 feet from a straight line of travel on the paved road.

The police found that the car had left the pavement and rolled on the grass of the parkway for a distance of 45 feet. The grass had been dug up by a spinning or whirling motion of the wheel and tires, from pressure to the left, but there were no tire or skid marks or other indications that the driver had applied the brakes before the crash, either on the pavement or on the grass. The car was completely off the pavement when it hit the tree head on, and the right rear wheel was 14 inches from the edge of the pavement. The tree was knocked to the westward and the large roots were jerked to the earth's surface on the east side, and leaves were on the car. The car was completely demolished. The bumper indicated that it had struck the tree some 6 or 8 inches to the left

of center. The ends of the bumper almost met in a hairpin around the tree, and the steering wheel post was pushed straight up to the top of the car. Its left side was crumpled, its frame bent about the center, and its body wrinkled and rumpled. The engine was driven back to where the driver's feet would normally be, and the left door was open 12 or 14 inches. There were four men in the car. One, the driver, (Crawford) was dead, hanging from the car with his feet caught in the foot pedals and his head almost touching the ground. Two of the others were in the front seat, one on top of the other with his feet and legs back of the front seat, and the fourth was in the rear on the floor. The arms, ribs, and legs of all were broken. Orme died a few minutes after reaching the hospital. Later Erickson died, and at 7:15 A.M. Burch died. None of them ever regained consciousness. There were no eyewitnesses to the accident except these four men who died as the result of it.

There was no evidence that any of the occupants of the car were intoxicated or under the influence of intoxicating liquors.

If the declarations in these two cases had alleged that the persons killed in the accident were passengers of the driver of the car who had paid for their transportation, thus creating the carrier-passsenger relationship between the parties, it would only have been necessary to allege and prove simple negligence on the part of the driver as being the proximate cause of the injuries and deaths. Had such been the case, the evidence above reviewed, which was not rebutted, would have been sufficient to sustain verdicts for the plaintiffs under the presumption of negligence arising from the application of that principle of the law of evidence known as the "res ipsa loquitur" rule. This Latin phrase is generally interpreted to mean in English, "The thing itself speaks," or "the transaction speaks for itself." Whether that rule of law is applicable to these cases, brought under what is our Florida guest statute, wherein each of the declarations charge that the deaths of the respective husbands of the plaintiffs was caused by "the wanton and reckless conduct and the gross negligence" of the driver of the car, we will presently discuss.

Chief Justice Erle's statement is the famous old English case of Scott v. The London & St. Katherine Docks Co., 2 H. & O., 596, has been generally regarded as an accurate definition of the doctrine from which the rule of res ipsa loquitur results. Attention was called to this case in the opinion of Mr. Justice CHAPMAN, now Chief Justice, on rehearing in the case of American Dist. Electric Protective Co. v. Seaboard Air Line Ry. Co., 129 Fla. 518, 177 So. 294. In the old English case referred to it was said:

"There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

This statement of the principle appears to have been applied in Stokes v. Salstonstall, 13 Peters 181, 10 L. ed. 115; New Jersey R. & Transp. Co., 22 Wall. 341, 22 L. ed. 877; Gleeson v. Va. Midland R. Co., 140 U.S. 435, 35 L. ed., 458; San Juan Light & Transit Co. v. Requena, 32 S. C. 399, 224 U.S. 89, 56 L. ed. 680, and other decisions of the U S. Supreme Court. One of the most often quoted State cases is Judson v. Giant Powder Co., 107 Cal. 549, 40 Pac. 1020, 29 L.R.A. 718.

The case of Sweeney v. Erving, 228 U.S. 233, 33 S.C. 416, 57 L. ed. 815, Ann. Cases 1914 D. 905, has caused a great deal of comment by courts and law writers, both for and against the position taken by Mr. Justice PITNEY in that case. It was therein held that the doctrine of res ipsa loquitur does not have the effect, when applied, of shifting the burden of proof so as to make it necessary for the defendant to overcome the presumption of negligence by a preponderance of evidence that there was an absence of negligence on his part. In the opinion, it is said:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to

be accepted as sufficient; that they call for explanation or rebuttal, but necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

This court has, to some extent at least, adopted the view expressed in the case just quoted from, although the case seems to be somewhat out of line with the previous decisions of our highest Federal court. Sweeney v. Erving was cited in Wood v. Worch, 68 Fla. 244, 67 So. 81, but that case really turned on the insufficiency of the evidence to make out a case under the res ipsa loquitur rule.

Louisville & N. R. Co. v. Rhoda, 73 Fla. 12, 74 So. 19, was a case brought under the Federal Employer's Liability Act, which contained no provision creating a rebuttable presumption of negligence such as obtained under the statute in this State in cases involving damage done by the running of railroad trains. In that case, this court cited Sweeney v. Erving, supra, and said: "If the doctrine of res ipsa loquitur is applicable in this case, such principle, when applied to the facts and circumstances of the injury, merely called for evidence in explanation or rebuttal, and uncontradicted evidence of the absence of negligence on its part was produced by the defendant." It was also held in that case that where the facts and circumstances proven by the plaintiff raise a presumption of negligence under the res ipsa loquitur doctrine, it is to be weighed against the evidence in explanation or rebuttal, and if the probative force of the circumstances and facts in evidence do not preponderate in favor of the presumption and against the defendant's proofs, the plaintiff, upon whom the burden of proof rests, fails to make out his case.

The case of Foster v. Thornton, 113 Fla. 600, 152 So. 667, held that the fatal result of a treatment by a physcian was not alone sufficient to bring the case within the res ipsa rule, but the case was finally decided on the question of the sufficiency of the circumstantial evidence introduced by plaintiff to prove the negligence alleged. In the case of Breit v. Haas,

126 Fla. 835, 172 So. 697, one of the opinions held that the res ipsa rule was applicable but the judgment was affirmed by an equally divided court.

Our next and most important case dealing with this doctrine was the case of American Dist. Electric Protective Co. v. Seaboard A. L. Ry. Co., 129 Fla. 518, 177 So. 294. In that case the court unanimously held that under the evidence the res ipsa loquitur rule clearly applied in plaintiff's favor, and, the defendant having offered no evidence in rebuttal, the jury's verdict in favor of the defendant, which evidently ignored the effect of res ipsa loquitur, was properly set aside by the trial court, and such action was by this court accordingly affirmed. This court held that the sagging wire which caused the injury in that case was shown to have been under the exclusive control of the defendant protective company, and that in the ordinary course of events, if that company had used due care the wire would not have sagged. But, although the defendant offered no evidence in rebuttal, this court held that the trial court could not properly have directed a verdict in favor of the plaintiff on the evidence; that res ipsa loquitur is not a substantive rule of law, but a rule of evidence which, on the facts in evidence, permitted the jury to draw an inference of negligence, but would not have permitted the trial court to instruct them to return a verdict in conformity with such inference; thus following the holding in Sweeney v. Erving, supra, in which the United States Supreme Court enunciated this doctrine for the first time in that court. This case was decided by the U. S. Supreme Court on April, 1913. But just about one year before Sweeney v. Erving was decided, the same court had held somewhat differently in a unanimous opinion in the case of San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 56 Law ed., 680. In that case the court defined the doctrine of res ipsa loquitur in much the same language it had defined it in the old case of Gleeson v. Va. Midland R. Co., supra, and a number of other cases, and held free from reversible error the trial court's charge to the effect that:

"And you are further instructed that if you believe from a preponderance of the evidence that the deceased came to

his death, while innocently and without knowledge of any danger, using an incandescent light, the current for which was furnished, or to which the electricity was supplied, by the defendant company, the presumption is that the electric company was negligent; and it devolved upon it to show that the surplus and dangerous current that came over the wires did not occur from any negligent act on its part."

This comes very near to holding that when the rule of res ipsa loquitur is applicable to the facts, it raises a presumption, rather than a mere inference, of negligence, and which presumption, if not rebutted, would have entitled the plaintiff to a verdict for compensatory damages. And when the case of American Dist. Electric Protective Company v. Seaboard A. L. Ry. Co. again reached this court, see 139 Fla. 451, 190 So. 820, this court apparently so held. On that second appeal, it appeared that the trial court had directed a verdict for plaintiff. On this trial the defendant had pleaded contributory negligence, in addition to the plea of not guilty. The evidence did not sustain the plea of contributory negligence, nor the plea of not guilty. This court held that the entire evidence was of such probative force, that the trial court, to give effect to the manifest weight of the evidence, should have granted a new trial if the jury had rendered a verdict for the defendant, and that, this being so, the trial court would not be held in error in directing a verdict for plaintiff.

Other cases involving res ipsa loquitur decided by this court since the decision in American District Electric, etc. Co. v. Seaboard A. L. R. Co. 129 Fla. 518, 177 So. 294, have followed quite closely the principles laid down in that case. See Orr v. Avon Fla. Citrus Corp., 130 Fla. 306, 177 So. 612; Reichenbach v. New Alamac Hotel Corp., 141 Fla. 797, 194 So. 250; O'Reilly v. Sattler, 141 Fla. 770, 193 So. 817; Coaster Amusement Co. v. Smith, 141 Fla. 845, 194 So. 336; Grubbs v. McShane, 144 Fla. 585, 198 So. 208; Skinner v. Ochiltree, 148 Fla. 705, 5 So. (2nd) 605; National Brands Inc. v. Norton Tire Co., 150 Fla. 378, 7 So. (2nd) 456; Florida Pub. Utilities Co. v. Wester, 150 Fla. 378, 7 So. (2nd) 788.

This general subject is dealt with in 20 R.C.L., 184-194; 45

C.J. 1193, et seq; 38 Am. Jur. 989, et seq., and in whole or in part in numerous text books, apparently the latest dealing solely with the subject of "Res Ipsa Loquitur," being written by Mr. Mark Shain, a retired member of the Massachusetts bar. The latter takes the position that res ipsa loquitur is a part of the substantive law of evidence, and that when thereunder the plaintiff's evidence is sufficient to make out a prima facie case, a presumption that plaintiff's injury was caused by defendant's negligence is created, thereby shifting the burden of proof and requiring the defendant, to prove, if he can, by his own evidence, that he has not been negligent. In 38 Am. Jur., beginning at page 989, Sec. 295, et seq., there is a valuable treatment of this subject. In Section 295 thereof it is said:

"While the mere fact of an injury will not give rise to a presumption of negligence on the part of anyone, under the doctrine of res ipsa loquitur, an expression which means, literally, the transaction speaks for itself, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care. Hence, the occurrence of an injury under the circumstances as set forth permits an inference, or in the terminology of some courts, raises a presumption, that the defendant is guilty of negligence."

If the two cases now before us could have been based upon a charge of simple or ordinary negligence only, on the part of the driver of the car, we think that, under the above authorities, the evidence introduced and not rebutted would have been abundantly sufficient, by applying the res ipsa

*loquitur* rule, to sustain such a charge. Many cases might be cited to uphold this conclusion. See Jones V. Stoddard, 138 Fla. 458, 198 So. 400, where judgment for defendant was reversed because the physical facts of the collision weighed so strongly against the oral testimony in behalf of defendant, as was graphically pointed out in the opinion of Mr. Justice CHAPMAN. That case was not brought under the guest statute; these two cases *were.* They *had to be,* if brought at all, as the husbands of these plaintiffs were guests of the owner and operator of the automobile at the time of the fatal accident.

Our guest statute was adopted in 1937 (chapter 18033) and now appears as Section 320.59, F.S. 1941. It provides "That no person transported by the owner or operator of a vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator, for injury, death or loss, in cases of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle," etc.

This court has held (except in at least one case—Jackson v. Edwards, 144 Fla. 187, 197 So. 833) that the words "gross negligence or wilful and wanton misconduct," as employed in this statute, are synonymous. See O'Reilly v. Satler, 141 Fla. 770, 193 So. 817; Kroger v. Hollaham, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886; Juhasz v. Barton, 146 Fla. 484, 1 So. 2-476; Cormier v. Williams, 148 Fla. 201, 4 So. (2nd) 525; McMillan v. Nelson, 249 Fla. 334, 5 So. (2nd) 867; Shams v. Saportas, 152 Fla. 48, 10 So. (2nd) 715.

Long before our guest statute was adopted this court had held that to authorize the imposition of punitive or exemplary damages, the evidence must show that the negligence complained of was of a gross and flagrant character, evincing a reckless disregard of human life, or of the safety of persons exposed to its dangerous effects; or such an entire want of care as would raise the presumption of a conscious indifference to consequences, or which shows such wantonness or recklessness or such grossly careless disregard of the rights and safety of others as may be equivalent to an intentional

violation of them. See Florida So. Ry. Co. v. Hirst, 30 Fla. 1, 11 So. 506, and the many cases following that case. See also 5 Am. Jur., 635-646; 74 A.L.R. 1198, 86 A.L.R. 1145; 96 A.L.R. 1480; and Cannon v. State, 90 Fla. 214, 107 So. 360.

In Mr. Justice BUFORD'S dissenting opinion in Jackson v. Edwards, supra, which was concurred in by Mr. Justice THOMAS, it is said:

"I am of the opinion that by the enactment of the statute, supra, the Legislature intended to limit the right of recovery by a non-paying guest to injuries sustained by reason of the wilful and wanton misconduct of the owner or operator of the automobile in which such guest may receive injuries and I construe the words "gross negligence" and the words "wilful and wanton" as used in the statute to have one and the same meaning. That, as used, the phrases mean either an actual or a constructive intent to injure.

"As is said in 45 C.J. 675, Section 41, 'Intent to do or omit act,—In order that an act or omission may properly be characterized as either wilful or wanton there must be, on the part of the person sought to be charged, a conscious intent to do or omit the act in question; an intentional failure to perform a manifest duty. Consequently, mere inattention does not amount to wilfulness or wantonness.' "

The substance of the principle stated in the above quotation from Mr. Justice BUFORD'S dissenting opinion in Jackson v. Edwards, supra, appears to have been substantially followed in most of our subsequent decisions on this subject, and herein above cited.

And in McMillan v. Nelson, 149 Fla. 334, 5 So. (2nd) 867, this court, speaking again through Mr. Justice BUFORD, said that "the act complained of must be of such character that the operator of the automobile would know, or should know, that by doing the act in the manner and at the time alleged be placed others in danger of injury."

Having held that the words "gross negligence" as used in our guest statute, means the same thing as "wilful and wanton misconduct," we come to the most vital question in this case. And that is: Can wilful and wanton misconduct

on the part of the driver of the automobile here involved be held to have been proven by the evidence in this case? By applying the res ipsa loquitur rule, as above stated, the evidence was undoubtedly sufficient to prove a prima facie case of simple or ordinary negligence, but the question here is, was it sufficient to prove gross negligence in the sense of wilful and wanton misconduct? The jury by their verdict held that it was not sufficient. The trial court refused to grant a new trial.

No witness was or could have been produced who knew what actually happened inside the automobile that night just before the accident. Nor is there any positive or direct proof that Crawford was driving the car. We think however, that the jury could properly have found that he was. It was his car. When they were leaving, or about to leave, Tommy Hand's Bar, Crawford had offered to take Commander Erickson home, and after the accident the position of Crawford's body clearly indicated that he was driving when the car ran against the tree. The testimony as to the physical condition of the car and the tree, just after the impact, were enough to authorize the jury to infer that the car was being driven at a high and excessive rate of speed when it struck the tree. The absence of skid marks also indicated that the brakes had not been applied, and that probably the driver was not looking ahead and had not seen the tree, or the reflector 70 feet from it, before his car struck the tree. But this may have been caused by the driver having carelessly turned his head to the right to speak to the man on his right, or to a man in the back seat of the car, or in an effort to hear some remark addressed to him by some member of the party in the car,— a form of negligence, by the way, which is all too common. Or some other occupant of the car may have grasped the wheel and driven the car off the road. There are many things that could have happened, but there was no one left to tell the tale. All that the jury could clearly have inferred from the physical facts was that the car was being driven by Crawford at an excessive rate of speed just before and at the time of the accident, and counsel for appellant argues that "it is quite evident" that by reason of the excessive speed Craw-

ford was unable to turn the car on the curve and remain on the 16 feet roadway, and that this caused the collision with the tree. There was no evidence as to whether or not the driver was familiar with the road or street he was travelling that night. He was within a block and a half of Commander Erickson's home at the time of the accident, but whether he knew that or not the record does not disclose.

The case of O'Reilly v. Sattler, 141 Fla. 770, 193 So. 817, involved a collision between an automobile, in which four young men were riding, and a truck. The truck and car were travelling at night in the same direction and the car overtook and ran into the truck. Both vehicles were demolished, a man and two dogs in the truck were killed, and all other persons in both car and truck were injured. Carr was driving the automobile with the consent of the owner, Sattler. Mr. Justice TERRELL, who wrote the court's opinion said:

"The evidence shows that at the time of accident Carr was driving the automobile; O'Reilly was sitting on the front seat with him, and Sattler was asleep on the back seat. The road was thirty feet wide, paved, and was a white way. The accident took place about 4 A.M. or later, four miles from the business section of St. Petersburg. The occupants of the truck were returning from a wild-cat hunt and were being driven by a negro, Jessie McPherson. The truck was struck by the automobile from the rear and wood, glass, and tire marks were on the street 138 feet from where they commenced to where the automobile and truck came to rest. No one witnessed the accident except the occupants of the automobile and truck and they had no intelligent knowledge of how it occurred or how fast the automobile was travelling. There is no evidence of intoxication or excessive speed unless we may assume that the distance traveled after the automobile struck the truck shows that the automobile was running at an excessive speed. We might assume that the accident was caused by excessive speed, misjudgment, or some momentary lapse of the driver, but this would not bring it within the statute quoted. . . .

"We find no proof in the record that affords any conclusive clue or presumption as to how the accident took place.

The automobile was proceeding on the right side of the road, and the road was straight, and the only witness on this point said that it was running fast but as to how fast, he had no idea. The doctrine of res ipsa loquitur is not available to aid the plaintiff in a case like this."

The cases of Jones v. Stoddard, supra, and American Dist. Electric Protective Co. v. Seaboard A. L. R. Co., supra, cited by appellant, did not involve the guest statute.

There is a penal statute (320.50 F.S. 1941) which appellant calls to our attention, and which provides that a speed in excess of twenty-five miles per hour in the residential portion of any city or town shall be deemed prima facie evidence of reckless driving, and that the person so driving, if convicted, shall be subject to a fine not exceeding $100.00 and jail sentence not exceeding three months. (Section 320.57 F.S. 1941) The trial court mentioned this statute in his charge to the jury. But the violation of such a statutory traffic regulation does not of itself constitute wilful and wanton misconduct, nor wilful and wanton negligence. 5 Am. Jur. 595; Higbee v. Jackson, 101 Ohio St. 75, 128 N.E. 61, 14 A.L.R. 131. The statute does not expressly impose any civil liability, and even though it may be applicable in some civil causes, as showing prima facie negligence, the mere violation of the speed limit fixed by the statute does not of itself constitute wilful and wanton misconduct or gross negligence within the meaning of our guest statute as this court has construed it.

As already above shown, we have held that excessive speed alone is not sufficient to bring a case within the statute, nor would mere misjudgment, or some momentary lapse of the driver. O'Reilly v. Satler, supra.

And we also held in O'Reilly v. Satler that "the doctrine of res ipsa loquitur is not available to aid the plaintiff in a case like this." Such also was the holding in Harvey v. Clark, 232 Iowa 729, 6 N.W. (2nd) 144, 143 A.L.R. 1141; Minkovitz v. Fine, 67 Fa. App. 176, 19 S.E. (2nd) 561 (where the facts were quite similar to those in this case), and in Phillips v. Briggs, et al., (Ia.) 245 N.W., 720. In the last cited case, the court said: "We find no case where any court has gone so far

as to invoke the doctrine of *res ipsa* and, therefore, create a presumption or inference of recklessness." That was a case where the driver of the car was charged with "recklessness" under the Iowa guest statute, and the physical facts indicated that the automobile was driven over a hole in the highway and then into a ditch.

Returning to the question of the speed of the automobile, in the case of Kroger v. Hollahan, 144 Fla. 779, 198 So. 685, Mr. Justice THOMAS, writing this court's opinion, said:

"The statement that the car was traveling at a high rate of speed seems to us to be little more than the use of a relative term. One rate of speed may well be reckless under some circumstances, while the same rate under other circumstances may not fall within that category. The averment that there was not sufficient time and space to pass the car in front proceeding in the same direction in order to avoid the one approaching is hardly more than the charge of an error in judgment, and the statement that the car careened across the road and struck a truck off the pavement simply indicates that when the automobile in which the plaintiff was driving swerved, it traversed the comparatively few feet to the opposite side of the pavement. Taking all of these allegations together, and construing them against the pleader, we think that they fall far short of establishing gross negligence, or wanton or wilful misconduct, as distinguished from ordinary negligence."

But in another case written by Mr. Justice THOMAS it was held that a high rate of speed (about 70 miles per hour), in connection with other facts testified by eye witnesses, such as using worn, smooth tires, and traveling over a smooth, black-topped highway, wet from rain, was relevant as one of the elements going to show gross negligence. Shams v. Saportas, 152 Fla. 48, 10 So. (2nd) 715. But it was also held in that case that the testimony of two highway patrolmen, who visited the wreck shortly after it occurred, as to their opinion as to the speed of the car based on their observation of the scene, and their experience, was properly excluded. See Also Wharton v. Day, 151 Fla. 772, 10 (2nd) 417; Winthrop v. Carinhas, 142 Fla. 588, 195 So. 399, and McMillan v.

Nelson, 149 Fla. 334, 5 So. 2nd 867. In this last cited case, the court, speaking through Mr. Justice BUFORD, held that "gross negligence" as used in the guest statute, is synomymous with wilful and wanton misconduct, and that to constitute gross negligence the act complained of must be of such character "that the operator of the automobile would know, or should know, that by doing the act in the manner and at the time alleged he placed others in danger of injury."

It is quite possible that the driver of the car in this case was not conscious that the high speed at which he was travelling would place his guests or himself in danger. They were travelling along a residential street at about 2 A.M., an hour when there is generally very little traffic. The evidence tends to show that the occupants of the car were all on friendly terms. And certainly the driver did not intend to endanger his own life. We have held that because of the general instinct of self preservation, which prompts men to exercise care for their own safety, there is ordinarily a presumption that due care was exercised in particular instances, but that this of course is a presumption which can be rebutted by evidence showing that the duly proven conduct of the person at the time is incompatible therewith. Harris v. Fla. Pub. Service Co., 100 Fla. 90, 129 So. 3331. The cited case was dealing with ordinary contributory negligence. The gist of appellant's case here was that gross negligence or wilful and wanton misconduct, within the meaning of those terms as used in the guest statute, was shown by the excessive speed of the automobile. But, as above shown, excessive speed alone is not sufficient to show gross negligence in the sense of wilful and wanton misconduct. And, as was said in O'Reilly v. Satler, supra, "The doctrine of res ipsa loquitur is not available to aid the plaintiff in a case like this."

Our conclusion is that on the evidence in this case, the jury's verdict in favor of the defendant, in each of these two cases, was justified, and the trial court was without error in refusing to grant a new trial. This renders it unnecessary to discuss the alleged errors in the court's charge, one of which was that the court gave a number of charges with reference to the meaning of gross negligence and wilful and wanton

misconduct, which, while proper, gave those elements undue prominence. But really this was the main question upon which these cases were founded. We are conscious of the general rule that a court should not in its charge give undue prominence to one phase of the case, but we hardly think that rule applies here. The court's reference to what inference the jury might or might not draw from their view of the premises could better have been left out, as their view of the premises cannot be treated, strictly speaking, as evidence, but, in the view we take of the case, it was, if error at all, harmless error. We think that while the court's charge was rather lengthy, it was on the whole fair to both sides and correct in the statements of the legal principles touched on.

We find no reversible error in the record, and the judgments appealed from are accordingly

Affirmed.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.

