# Richmond

CARRIE STRADER TAYLOR v. EDWIN D. TAYLOR, ADM'R, ETC.

June 20, 1949.

Record No. 3490.

Present, Gregory, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Williams & Williams* and *A. M. Aiken* for the plaintiff in error.

*Meade & Talbott* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The action to recover damages for personal injuries sustained by the plaintiff in error, hereinafter referred to as plaintiff, was instituted in the Corporation Court of the city of Danville. The injuries were sustained in an automobile accident which occurred in the State of Florida. There was a verdict of $12,500 in favor of the plaintiff against the administrator of William Thomas Taylor, the owner and driver of the automobile in which the plaintiff was riding as his guest, which was set aside by the trial court on the ground that there was no evidence to support it. Final judgment was entered for the defendant.

In the light of the jury's verdict in her favor, the following statement of the facts contained in the plaintiff's petition for a writ of error is supported by the evidence:

"The defendant's decedent, William Thomas Taylor, his wife, his son, Roy M. Taylor, and his wife, the plaintiff, were on an automobile trip in Florida. William Thomas Taylor owned the car and was driving it shortly before this fatal accident. He was proceeding northward, about 11:30 A. M., with the weather clear and the road dry. The road was straight and about forty feet wide, and the country was flat. There was not very much traffic on the road, and the road was visible and clear for a long distance. Mr. Taylor was not driving fast, but he was not driving steadily, showing a tendency to zigzag, or drive on the wrong side of the road, without any apparent reason.

"Just before the accident, a Mr. J. F. Hopkins, of Georgia, was approaching from behind Mr. Taylor, driving his car

with a trailer attached, and wanted to pass Mr. Taylor. Mr. Hopkins had been following Mr. Taylor for several miles, and had been wanting to pass him, but Mr. Taylor had been ignoring the signal, sticking to the center of the road, or even driving to the left-hand side, for a good many miles. Finally, in response to several signals of Mr. Hopkins' horn, Mr. Taylor did pull over on the right-hand side of the road, which was forty feet wide. No other vehicles were in sight, and Hopkins drove on the left side to pass Mr. Taylor. While the trailer was in the act of passing, Taylor turned his car to the left, crossed over the yellow line, crossed the center of the road and struck the trailer a light blow. Then, Taylor turned his car to the right, drove it first off the road onto the shoulder, and then off the shoulder to strike a tree with great violence. An inspection of the road immediately after the accident revealed that the point of impact, where the trailer was struck, was about twenty inches to the left of the center line."

William Thomas Taylor was instantly killed, and his wife and son died shortly afterwards. The plaintiff, the only survivor, testified that her memory had been blacked out by her injuries and she had no recollection of anything that happened at the time of the accident, or for some hours prior thereto.

The undisputed testimony shows that, in addition to those contained in the plaintiff's statement above quoted, the following facts are also established:

The tire marks on the highway and the adjacent terrain showed that the car had proceeded a distance of fifty or seventy-five feet from the point of impact with the trailer, diagonally across the soft sand shoulders until it struck the tree, which was approximately twenty-five feet from the edge of the pavement. The trailer was fastened to the rear of the DeSoto car with a trailer hitch.

Hopkins testified that the impact of the Taylor car with his trailer was slight and he felt only a slight bump. However, he decided to see what had happened and stopped his

car and trailer off of the right side of the pavement at a point about seventy-five or a hundred yards beyond the wrecked car. He testified that, after the accident, there was paint from the trailer on the left front and left rear fenders and on the extreme left end of the front bumper of the Taylor car. Also that there was paint from the Taylor car on the right side of the trailer extending to its front corner. He further testified that, at the time he passed the Taylor car, he looked at his speedometer and it registered thirty-seven miles an hour, and that the Taylor car was making less speed.

Since the accident occurred in the State of Florida, the rights and liabilities of the plaintiff and the defendant are controlled by the law of that State. *Baisie* v. *Warren*, 158 Va. 505, 164 S. E. 655; *Sutton* v. *Bland*, 166 Va. 132, 184 S. E. 231; *Michie's Jurisprudence, Virginia-West Virginia*, Volume 2, Section 75, page 559. We must therefore have recourse to the decisions of the Florida Supreme Court.

In the recent case of *Orme* v. *Burr*, 157 Fla. 378, 25 So. (2d) 870, which was decided in May, 1946, the court made an exhaustive review of its previous decisions interpreting the Florida statute involving liability of an owner or operator of a car to his guest for injuries sustained as the result of the operation of the car. This statute was introduced in evidence. We quote at length from the opinion of Mr. Justice Brown in that case:

"Our guest statute was adopted in 1937 (chapter 18033) and now appears as Section 320.59, F. S. 1941, F. S. A. It provides 'That no person, transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle,' etc.

"This court has held (except in at least one case—*Jackson*

v. *Edwards*, 144 Fla. 187, 197 So. 833, 834) that the words 'gross negligence or wilful and wanton misconduct,' as employed in this statute, are synonymous. See *O'Reilly* v. *Stattler*, 141 Fla. 770, 193 So. 817; *Koger* v. *Hollahan*, 144 Fla. 779, 198 So. 685, 131 A. L. R. 886; *Juhasz* v. *Barton*, 146 Fla. 484, 1 So. (2d) 476; *Cormier* v. *Williams*, 148 Fla. 201, 4 So. (2d) 525; *McMillan* v. *Nelson*, 149 Fla. 334, 5 So. (2d) 867; *Shams* v. *Saportas*, 152 Fla. 48, 10 So. (2d) 715.

&ast; &ast; &ast; &ast; &ast; &ast;

"In Mr. Justice Buford's dissenting opinion in *Jackson* v. *Edwards, supra,* which was concurred in by Mr. Justice Thomas, it is said:

" 'I am of the opinion that by the enactment of the statute, supra, the legislature intended to limit the right of recovery by a non-paying guest to injuries sustained by reason of the wilful and wanton misconduct of the owner or operator of the automobile in which such guest may receive injuries and I construe the words "gross negligence" and the words "wilful and wanton" as used in the statute to have one and the same meaning. That, as used, the phrases mean either an actual or a constructive intent to injure.

" 'As is said in 45 C. J. 675, Section 41 "Intent to do or omit act. In order that an act or omission may properly be characterized as either willful or wanton there must be, on the part of the person sought to be charged, a conscious intent to do or omit the act in question; an intentional failure to perform a manifest duty. Consequently, mere inattention does not amount to willfulness or wantonness." '

"The substance of the principle stated in the above quotation from Mr. Justice Buford's dissenting opinion in *Jackson* v. *Edwards, supra,* appears to have been substantially followed in most of our subsequent decisions on this subject, and herein above cited." (25 So. (2d) at page 876).

Following the foregoing resume of the former decisions of the Florida Supreme Court, the opinion proceeds to state the exact question which was posed by the statute in

the case then under consideration. The opinion continued:

"Having held that the words 'gross negligence' as used in our guest statute, mean the same thing as 'wilful and wanton misconduct,' we come to the most vital question in this case. And that is: Can wilful and wanton misconduct on the part of the driver of the automobile here involved be held to have been proven by the evidence in this case?" (25 So. (2d) at pages 876-877).

In the case quoted from, there was undisputed evidence that the driver of the automobile was operating his car at an excessive rate of speed. A police officer saw him a short time before cross two "stop" streets without stopping. All of the occupants of the car were killed and there were no eye witnesses. In order to strike the tree, the car had to deviate about twenty-six feet from a straight line of travel on a paved road. There were also other facts stated in the opinion which justified an inference of negligence.

The court held that the accident, having happened under the circumstances shown, warranted an inference of negligence under the doctrine of *res ipsa loquitur*. And the court further held that, if the case under consideration could be based upon a charge of simple or ordinary negligence, the evidence would have been abundantly sufficient by applying the *res ipsa loquitur* rule to sustain such a charge. The court held, however, that the rule does not justify an inference of gross negligence, or wilful and wanton misconduct. It said that the accident may have been caused by the driver failing to look ahead, or "having carelessly turned his head to the right to speak to the man on his right, or to a man in the back seat of the car, or in an effort to hear some remark addressed to him by some member of the party in the car, * * *." And the court concluded that neither such failure to keep a lookout, nor driving at an excessive rate of speed, amounted to gross negligence or wilful and wanton misconduct as used in the Florida statute.

In accordance with the decisions of the Florida Supreme Court, we are therefore called upon to examine the evi-

dence in the record before us, and consider the question whether "wilful and wanton misconduct on the part of the driver of the automobile here involved (can) be held to have been proven by the evidence in this case."

The negligence, which was the real proximate cause of plaintiff's injury, was the act of the decedent in driving his car on the left side of the center dividing line. This may have been the result of his failure to realize that the DeSoto was followed by a trailer, and, as said in the opinion in the Florida case we have just considered, he may have turned his head to speak to someone or to listen to a remark being addressed to him by a companion, or because he was not giving proper attention to the passing vehicle. The decedent, Taylor, had every incentive to exercise proper care in operating the automobile. His wife, his son, and his daughter-in-law, were passengers in the car, and his own safety was also involved. He was operating the car at a very reasonable rate of speed.

The plaintiff argues that the manner in which the car was operated after it collided with the trailer was, itself, evidence of gross negligence. It is impossible to say, however, what may have been the effect of this collision. Taylor may have become frightened and highly excited, and in the excitement his foot may have slipped from the brake to the throttle and speeded up the car. The evidence does not justify any conclusion as to what actually caused the car to leave the road after the contact with the trailer.

The learned judge of the trial court was of opinion that the evidence was insufficient to support a finding of gross negligence or wilful and wanton misconduct on the part of the decedent, Taylor, in the manner in which he operated the car. Nor can we say that, applying the principles established by the Florida court, the conclusion of the trial court was erroneous.

The judgment complained of must be affirmed.

*Affirmed.*