**LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY, Appellant,**

v.

**Ollie Mae ADAMS, Appellee.**

No. 18728.

United States Court of Appeals
Fifth Circuit.

June 23, 1961.

Rehearing Denied Aug. 24, 1961.

Robert P. Gaines, of Yonge, Beggs & Lane, Bert Lane, Pensacola, Fla., for appellant.

Richard P. Warfield, Pensacola, Fla., for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Ollie Mae Adams was a passenger on a Louisville & Nashville Railroad Company train [1] eastbound from New Orleans, Louisiana. She was injured when the car in which she was riding and several other cars of the train derailed near Crestview, Florida.

Her complaint in the Circuit Court of Escambia County, Florida, was removed to the federal district court on the ground of diversity of citizenship. Trial resulted in a judgment entered upon a jury verdict for plaintiff in the amount of $3,-000. Appealing, the defendant urges that the district court erred in denying its motion for a directed verdict and for judgment n.o.v. and its motion for a new trial, on the ground of an insufficiency of the evidence of negligence, and also erred in instructing the jury that the defendant was presumed to be guilty of negligence and had the burden of proving that it was not.

At the time of the derailment, the train was traveling at a speed of 40 to 45 m.p.h. on a straight, flat track, and the engineer and fireman were both watching the track ahead. An inspection after derailment revealed that a piece of rail approximately 2.5 feet long had broken out of the rail. It was found in a direction from the point of the break opposite to that in which the train was moving. Two other broken pieces of rail, approximately 8.75 feet long and 3.88 feet long, were carried forward with the train as the cars derailed.

Evidence as to the cause of the first break came from the defendant's expert witnesses, and the plaintiff produced no contrary evidence. According to that testimony, the first break was caused by a transverse defect inside the rail known as an engine burn fracture.

An engine burn fracture is caused by crystallization of the metal under an engine burn. Engine burns are caused by wheels spinning on the rail. Engine burns are common and are not considered a condition warranting removal of the rail. An engine burn fracture is relatively rare. How long it takes such an internal defect to result in an external crack is unknown to the experts in the field. It is not visible to the eye without a detailed examination of the rail, but it is revealed by electronic testing devices.

Inspections of the track of the defendant are conducted by Sperry Rail Service twice a year. The derailment occurred on January 12, 1958, and previous inspection was made in July of 1957. At that time all defects reported by Sperry Rail Service were corrected. In addition to the inspection by Sperry the defendant has its section foremen make a visual inspection once a week. The Sperry Rail Service inspection can detect internal defects, including engine burn fractures, and is commonly used throughout the United States by railroads.

An inspection of the rail in question was made by the section foreman on a motor car approximately 36 hours before the derailment. He did not see any defects in the rails near the scene of the derailment.

The last train that crossed the section of track in question before the derailment was No. 60. It was headed in the opposite direction and passed the scene of the accident approximately two hours earlier. The flagman on that train was in the front end of the rear car. He noticed no unusual bumping as the train passed the area in question.

In Florida, as elsewhere, a common carrier owes the highest degree of care for the safety of its passengers.[2]

---

1. The parties will hereafter be referred to as plaintiff and defendant.

2. Pelot v. Atlantic Coast Line R. Co., 1911, 60 Fla. 159, 53 So. 937; Warfield v.

The plaintiff's case was made out when she proved injuries resulting from the derailment of the car in which she was riding. As said in a case strongly relied on by the defendant: "In an accident such as this, which raises a presumption of negligence, the case must go to the jury, unless the evidence introduced by the defendant conclusively exculpates it from negligence." Holland v. Director General of Railroads, 3 Cir., 1921, 273 F. 928, 929, 930.[3]

In that case, the Court held that the defendant was entitled to a directed verdict, and stated the evidence as follows:

"The undisputed evidence shows that the derailment of the train in which the plaintiff Hazel Holland was riding was due to the breaking of a rail, caused by a lateral or 'internal transverse fissure,' which was concealed and could not have been detected by the naked eye, and that no other test than the actual breaking of the rail would have revealed this defect."

Holland v. Director General of Railroads, supra, at page 930.

In the present case, as has been said, the evidence discloses that, though invisible to the naked eye, an internal engine burn fracture can be detected by electronic tests provided by the Sperry Rail Service. The defendant's evidence was that the last Sperry inspection of the rail in question occurred approximately six months before the break.

An employee of the Sperry Rail Service testified to the frequency of inspections on other railroads:

"The figures that I have are—we have ninety-six railroads, there are only five that have a contract with us on the basis of oftener than six months. There are twenty-seven who contract on a basis of six months intervals. One contracts on a nine months basis and fifty-two on a yearly basis, and the remainder are over a year."

Peculiarly, the evidence is silent as to the expense of Sperry inspections, their interference with traffic, or any criteria, other than the custom of railroads, from which the jury might determine the reasonableness *vel non* of having such inspections made no more frequently than every six months.

In Florida, as generally elsewhere,[4] evidence of custom is not conclusive proof of diligence. As said in Sea Board Air Line Ry. Co. v. Watson, 1927, 94 Fla. 571, 113 So. 716, 718:

"If the question had been asked as to the general custom of railroads in that particular, it would have been permissible and proper. 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.' Texas & Pac. R. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, 906; Wabash Ry. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605; 20 R.C.L. 27; 27 R.C.L. 194. While in some jurisdictions the ordinary usage or custom of the business or occupation is made the test of negligence, the weight of authority is that as negligence is the doing or failure to do what ordinarily prudent men would do under the same circumstances the test of ordinary custom, while relevant and admissible in evidence, is not controlling, especially where the custom is clearly a careless or dangerous one. 29 Cyc. 435, and cases cited; George v. Mobile & O. R. Co., 109 Ala. 245, 19 So. 784. It would seem to us that the proper rule in such a matter would be, in cases where the method

Hepburn, 1912, 62 Fla. 409, 57 So. 618, 622; Edwards v. Jacksonville Coach Co., Fla.1956, 88 So.2d 543; Thomason v. Miami Transit Co., Fla.1958, 100 So.2d 620.

3. See also, Warfield v. Hepburn, 1912, 62 Fla. 409, 57 So. 618, 622; 13 C.J.S. Carriers § 764, pp. 1458, 1459; Annotation, 23 A.L.R. 1214.

4. Prosser on Torts, 2d ed., 135, 136.

used was not clearly and inherently negligent or dangerous, to admit evidence of the general custom of others engaged in the same kind of business or occupation, as to the particular method under investigation, for the consideration of the jury for whatever light it might throw upon the question as to whether or not the method used was or was not negligent under the circumstances of the particular case, but not to any extent whatever as conclusive of the question."

█ Very clearly, the district court did not err in denying the defendant's motions for a directed verdict and for judgment n.o.v. or its motion for a new trial.

In a conference in the court's chambers preceding the court's charge to the jury, defendant's counsel stated: "I would like the record to show that I ob-

ject to the charge that places the burden of proof upon the defendant and also any instruction to the jury that there is presumption of negligence on the part of the defendant." At the conclusion of the charge defendant's counsel stated: "I would like to get into the record our exception, specifically, the burden of proof." It is doubtful whether the foregoing constituted compliance with the requirement of Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A., that he state "distinctly the matter to which he objects and the grounds of his objection." So assuming, however, we find no reversible error in the parts of the court's charge to the jury to which defendant's brief states that its objection was directed.[5]

Defendant's argument is that those parts of the court's charge relate to the burden of proof rather than to the burden of going forward with the evidence,

5. "If you find from the facts in this case that you are unable to determine the exact nature or with reasonable certainty how this derailment came about, it is unexplained in the minds of the jury, then the Court charges you that the burden of proof on that issue of negligence would go to the defendant to then come forward with certain evidence to show that they did maintain the highest degree of care in the operation of the train, the construction of the track, in the maintenance of the track. Now, that is not to say that the Court is saying in the facts of this case that it was unexplained. The plaintiff contends that it was unexplained and, therefore, says that it is up to the L&N to come forward and show that they maintained a very high degree of care throughout. The plaintiff contends that they failed to do that. The defendant says even so, even with this, that they have come forward and have met the burden by showing through their witnesses that they did do everything that could reasonably be expected for the operation of the train, for the maintenance of the track, and for the inspection of the track prior to the time. You have heard all of that testimony and I am not attempting to weigh it, nor will I attempt to weigh any of the testimony. That is your job. I merely mention it to illustrate the principles of law that are to guide you in your deliberations; and briefly again, in that context let me say this to you, that if you find from the evidence that the accident was unexplained to your satisfaction then that burden would go to the defendant and it would become the responsibility of the railroad to come forward and if they showed that they had done all of those things, the highest degree of care that I mentioned to you awhile ago the railroad owes a passenger, then your verdict should be for the defendant, in the absence of which, however, your verdict should be for the plaintiff.
\* \* \* \* \*
"To avoid any possible confusion as to the point, again, the Court wishes to briefly state that if you find from the evidence the matter was unexplained, the burden going on to the evidence goes over to the defendant to explain how it did happen. And if they do satisfy, that is the railroad, by its evidence, has come forward and has said they have established by a preponderance of the evidence that they did in fact do everything that could be reasonably expected in maintaining the highest care for the railroad and the track and in its operation and maintenance, then they have met that burden and your verdict should be for the defendant, in the absence of which, however, your verdict should be for the plaintiff in accordance with the principles that I have given you on damages as to those items."

and that the Florida courts have held that the effect of the doctrine of *res ipsa loquitur* and the effect of the Florida statute [6] are alike to shift the burden of going forward with the evidence, but not the burden of proof.

In the first place, it is not at all clear from the parts of the charge quoted in footnote 5, *supra*, that the court intended to charge on the burden of proof as distinguished from the burden of going forward with the evidence. It is entirely possible that if its attention had been properly called to the distinction it would have restricted the charge to the burden of going forward with the evidence. In any event, the case upon which the defendant relies as to the effect of *res ipsa loquitur* in Florida, Louisville & Nashville R. Co. v. Rhoda, 1917, 73 Fla. 12, 74 So. 19, appears to have been departed from in later decisions reviewed at length in Orme v. Burr, 1946, 157 Fla. 378, 25 So.2d 870, 873–875, followed in St. Petersburg Coca-Cola Bottling Co. v. Cuccinello, Fla.1950, 44 So.2d 670. As to the Florida statute defendant relies on Atlantic Coast Line R. Co. v. Connell, Fla. App.1959, 110 So.2d 80, 81, certiorari denied Fla., 115 So.2d 560. In that case the District Court of Appeal of Florida said:

> "The statutory presumption of negligence by the railroad places upon it the burden of affirmatively showing that it has 'exercised all ordinary and reasonable care and diligence' (F.S. § 768.05, F.S.A.). When ordinary and reasonable care and diligence in the operating of the train have been shown, the presumption ceases to exist."

As was mentioned earlier in this opinion, the plaintiff produced no evidence to contradict the testimony of defendant's expert witnesses. So that, if the jury believed from that testimony that the defendant met the "burden of affirmatively showing that it has 'exercised all ordinary and reasonable care and diligence,' " it must necessarily have believed also that the defendant had met both the burden of proof and the burden of going forward with the evidence. Under the circumstances of this case, the practical distinction between the two is purely abstract.

The judgment is therefore

Affirmed.

CAMERON, Circuit Judge, dissents.

---

**6.** "§ 768.05 *Liability of railroad company*
"A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Florida Statutes Annotated § 768.05.