86 So.2d 792 (1956)
Randolph P. MYERS, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, and W.R. Davis, Appellees.
Randolph P. MYERS, as Administrator of the Estate of Susan A. Myers, Deceased, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, and W.R. Davis, Appellees.
Harold B. BENDER, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, and W.R. Davis, Appellees.
Supreme Court of Florida. En Banc.
April 11, 1956.
*793 Wm. McHardy Berson of Sanders, McEwan & Berson, Orlando, for appellants.
LeRoy B. Giles, Edward K. Goethe and David W. Hedrick, Orlando, for appellees.
TERRELL, Justice.
These cases were the consummation of a railroad crossing accident within the corporate limits of Winter Park, Florida. Marsha C. Bender and Susan A. Myers, seniors in Edgewater High School, Orlando, were traveling in a Jeepster convertible sedan over Minnesota Avenue, their objective to visit friends at Winter Park High School, about four miles distant, during the noon recess. At the intersection of Minnesota Avenue and the Atlantic Coast Line Railroad, they collided with the Champion, one of the fast passenger trains of the railroad. The Jeepster was demolished and both girls were rendered unconscious; Susan A. Myers died in a few hours without regaining consciousness and Marsha C. Bender regained consciousness after several hours but received severe injuries.
Randolph P. Myers, father of Susan A. Myers, brought suit against Atlantic Coast Line Railroad Company and W.R. Davis, the engineer, for the wrongful death of his daughter and recovered a judgment for $47,500. He brought a second suit as administrator of the estate of Susan A. Myers and recovered a judgment for $5,300 against the Atlantic Coast Line Railroad Company, being the present value of her estate, had she lived her normal life expectancy of fifty years. Harold B. Bender brought suit against Atlantic Coast Line Railroad Company and W.R. Davis to recover damages for the value of his Jeepster, including doctors, hospital and other *794 bills incurred by his daughter, Marsha C. Bender, as result of the accident and recovered a judgment of $2,000.
The three cases were tried together by order of the court and separate verdicts were entered in each case. At the conclusion of the trial, the court granted motion on the part of defendants for a new trial in each case pursuant to sec. 59.07(4), Florida Statutes, F.S.A., his order stating:
"The motion for new trial is herein granted on the ground that the verdict for the plaintiff is contrary to the manifest weight of the evidence. The court is of the view that the statutory presumption of negligence of the defendant has been overcome by defendants' evidence, and the burden of showing negligence proximately contributing to the collision must rest on a preponderance of the evidence. The only evidence of negligence of defendants presenting a jury question concerns the conflict in the evidence respecting giving of appropriate warning of the approach of defendants' train. The evidence on this question, while legally sufficient to present a jury question, so preponderates in defendants' favor that the court is of the view that the manifest weight of the evidence in this cause establishes the negligence of the driver of the vehicle involved as the sole proximate cause of the collision, consequently, a verdict for the plaintiff is not approved by the Court and a retrial is ordered. It is the Court's view that this case is controlled by Covington v. Seaboard A.L. Ry. Co. [99 Fla. 1102], 128 So. 426. Being of this view, no other grounds assigned in motion for new trial are considered."
These appeals are from the orders granting new trial in each case. Appellees filed cross-assignments of error in each case which were identical except that cross-assignment No. 9 was included only in the two Myers cases and not in the Harold B. Bender case. By stipulation of counsel and order of the court, a single transcript has been filed for all cases. Since it is agreed that the questions in each case are identical, a single brief for all cases has been filed. We approve this practice.
Appellants state their first question as follows:
"Where trial court, in order granting a new trial, finds that there is `evidence of negligence of the defendants presenting a jury question' concerning `the conflict in the evidence respecting giving of appropriate warning of approach of defendant's train,' and that the evidence on this question is `legally sufficient to present a jury question,' but that it so preponderates in defendant's favor that the court is of the view that `the manifest weight of the evidence  establishes the negligence of the driver of the vehicle as the sole proximate cause of the collision,' and where there was no finding that the jury was misled, motivated by prejudice, passion or any other improper cause, and no finding that the verdict was contrary to the probative force of the evidence or the justice of the cause, may the trial court grant a new trial?"
The orders denying motion for directed verdict and granting a new trial in each case are the same as the order quoted above. An examination of the first question shows that appellants challenge that part of the order of reversal reading, "the verdict for the plaintiff is contrary to the manifest weight of the evidence. The only evidence of negligence of the defendant presenting a jury question concerns the conflict in the evidence respecting the giving of appropriate warning of the approach of defendant's train. The evidence on this question so preponderates in defendant's favor that the court is of the view that the manifest weight of the evidence in this case establishes the negligence of the driver of the vehicle as the sole proximate cause of the collision, consequently a verdict for the plaintiff is not approved by the court and a retrial is ordered."
*795 Appellants contend that the quoted part of the order granting a new trial should be reversed because in finding that the "verdict was contrary to the manifest weight of the evidence," said order should have further found that the "jury was misled, motivated by prejudice, passion or any other improper cause," or some equivalent finding. The statute, sec. 59.07(4), Florida Statutes, F.S.A., provides in substance that in every case where motion for new trial is granted, the trial court shall indicate in his order the ground on which the new trial was granted. See also Common Law Rule 39(d), now appearing as Rule 2.6(d) of the 1954 Florida Rules of Civil Procedure. No doubt the purist could have clothed the order in words more nearly approaching the Queen's English, but unfortunately they (the purists) do not frequent the bench or bar so we are impelled to say there is no merit to the contention. When the trial judge finds that the verdict is contrary to the manifest weight of the evidence or words of similar import, it becomes his duty to grant a new trial. Tampa Waterworks v. Mugge, 60 Fla. 263, 53 So. 943; Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 67 So. 44; Richbourg v. Hilton, Fla., 56 So.2d 539; Garrison v. Florida Power & Light Co., Fla., 65 So.2d 2; Schneider v. Cohan, Fla., 59 So.2d 644; Farrell v. Solary, 43 Fla. 124, 31 So. 283; Clary v. Isom, 55 Fla. 384, 45 So. 994, and many others.
These and many other cases commit this court to the doctrine that where the trial court grants a new trial on the ground that the verdict is contrary to the manifest weight of the evidence, his decision will not be overthrown absent a clear showing of abuse of discretion. The evidence in this case amply supports the court's finding that the sole proximate cause of the accident was the negligence of the driver. It is shown that the train approached the crossing where the accident took place from the south going 43 miles per hour while the Jeepster approached from the west traveling 23 to 25 miles per hour. The driver had recently been licensed to drive and at the time was driving with a silk scarf over her head and tied under her chin. The time was 12:47 p.m., February 3, 1953. Susan A. Myers was seated to the right of the driver with her back to the right door of the Jeepster and was facing the driver opposite the direction the train was approaching and in the driver's line of vision to the approaching train. Both girls were familiar with the crossing and had passed over it frequently in the days preceding the accident. While there were obstructions distant from the crossing, the last 115 feet before reaching it were clear and open and either girl could have seen the train if she had looked, but they drove straight ahead into its path without changing speed or looking to the right or left despite the fact that the manifest weight of the evidence shows that the bell was ringing and the diesel horn sounded constantly the last 744 feet before the point of impact. The fireman saw the Jeepster when it was in 40 feet of the crossing and deeming that it was not going to stop immediately signaled the engineer who applied the emergency brakes at once but too late to avoid the collision though the brakes were in good condition and functioned properly. At least six witnesses saw the tragedy, four of whom were not employed by defendant. The gist of their testimony was that Susan A. Myers and Marsha C. Bender disregarded the repeated sounding of the diesel horn, the ringing of the bell and drove headlong in front of the engine without reducing speed, looking or listening for its approach. There was the negative testimony of Mrs. Gandee who was seated in her bedroom 333 feet east of the crossing near the north window fronting west toward the track. The windows and doors were closed and the radio was on. The net result of her testimony on cross was that the train may have blown but she did not hear it.
Appellants place much emphasis on the testimony of Mrs. Gandee. In their third question they also contend that the gravest error committed by the trial court was in its holding that the speed of a train at a city crossing could not be negligence. We do not so interpret the finding of the trial *796 court. We think he necessarily found that the agents of the railroad company exercised reasonable care in handling the train. It is true that no one was standing at the crossing to warn motorists of the approach of the train but there was a "cross buck sign" to warn every one to be careful and it was in plain view. The crossing was not in the congested part of the city but was in the suburbs where the slightest caution would have averted the accident. The cases generally impose this duty on the motorist. The record reflects ample support for the trial court's finding.
Inspection of the record discloses that this question comprehends other points raised in the case, including the legal sufficiency of controverted evidence. In many aspects this case is not materially different from McAllister v. Tucker and Seaboard Airline Railroad Co., Fla., 88 So.2d 526. In that case we cited and discussed many cases which we think foreclose most of the points raised in this case. We do not repeat them here but content ourselves with a discussion of the points of difference in the two cases. What took place at the crossing and immediately approaching it controls the disposition of both cases. Everything else discussed amounts to little more than prologue.
After all is said, it can not be escaped that the sole proximate cause of the accident was driving onto the tracks in front of the oncoming train without looking, listening or exercising the slightest safety precaution. The speed of the train did not relieve the duty to look for it. Motorists in this case were familiar with the crossing; warnings of it only put them on notice of its presence. It then became their duty to look and guard their safety. The manifest weight of the evidence establishes negligence of the driver, so the judgment is affirmed.
Affirmed.
DREW, C.J., and THOMAS and O'CONNELL, JJ., concur.
DICKINSON, Associate Justice, concurs in judgment of affirmance.
THORNAL, J., dissents.
ROBERTS, J., not participating.
THORNAL, Justice (dissenting).
The order granting the new trial conceded that there was evidence of negligence presenting a jury question and at the same time renders a judicial finding that negligence of the driver was established as the sole proximate cause. I am of the view that under the comparative negligence rule the case was properly one for the jury which by their verdict disposed of the matter. I, therefore, respectfully dissent.