112 So.2d 263 (1959)
Randolph P. MYERS, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, and W.R. Davis, Appellees.
Supreme Court of Florida.
May 13, 1959.
*264 Edward Kirkland and Baker, Berson, Lilley & Baker, Orlando, for appellant.
Giles, Hedrick & Robinson and Edward K. Goethe, Orlando, for appellee.
HOBSON, Justice.
This is the second appearance of the instant case before this court. During its first appearance we affirmed the trial judge's order granting a new trial on the ground that the verdicts for the plaintiffs were contrary to the manifest weight of the evidence.[1] Because Marsha Bender, one of the original plaintiffs, entered a voluntary nonsuit, the second trial involved only the claims on behalf of Susan Myers. At the conclusion of both the plaintiff's and the defendants' presentations, the defendants moved the court to direct a verdict against the plaintiff. This motion was granted. The plaintiff's appeal from this directed verdict can only be placed in its proper perspective by an examination of the facts. The testimony before the court at the second trial is, with but minor exceptions, equivalent to that before the trial court at the first trial.
It is undisputed that this case involves a railroad crossing collision within the corporate limits of Winter Park, Florida, between an automobile driven by Marsha Bender, a minor, and an Atlantic Coast Line Railroad Company passenger train. Marsha Bender had been licensed to drive alone for approximately two months. At the time of the accident she was wearing a light silk scarf on her head, the ends of which were brought down over her ears and tied beneath her chin. Susan Myers, the passenger in the Bender automobile, was seated in the right hand front seat facing the driver with her back to the right front door of the Jeepster and the approaching train. The train approached the Minnesota Avenue crossing, where the accident took place, from the south at an admitted speed of 43 miles per hour, while the Jeepster automobile approached from the west at 23 to 25 miles per hour. At the time of the accident Winter Park had no city ordinance governing the speed of trains within its corporate limits. The crossing was protected by a single "cross buck" warning sign.
It was stipulated that the view of eastbound motorists on Minnesota Avenue as they approach the crossing is obscured to railroad traffic approaching the crossing from the south by the office and warehouse building of the Florida Power Corporation until such time as the motorist reaches a point 115 feet west of the west rail of the track, at which time said motorist looking at a 90° angle to the right has an unobstructed view down the track a distance of 230 feet. It was undisputed that the train's brakes were applied in emergency and took effect right at the point of impact, bringing the train to a stop with its engine 1,155 feet past the point of impact.
As a result of the collision, the Jeepster was demolished and both girls were rendered unconscious. Susan Myers died without regaining consciousness, while Marsha Bender sustained severe injuries. At the first trial the jury's award to those suing in behalf of Susan Myers totaled $52,800. A verdict of $2,000 was also awarded to Harold B. Bender, who sued to recover damages for the value of his Jeepster, and his daughter's medical expenses.
The only point upon which the testimony appears disputed at either trial concerns the adequacy of the train's warning of its approach to the crossing.[2] The testimony *265 presented on this subject at both trials was substantially similar.
The train engineer and fireman testified that the train's automatic bell was operating, its light was on and the standard crossing signal was given on the train's air horn intermittently during the last 744 feet before the point of impact. All but two of the six disinterested witnesses maintain that they heard the diesel sound its horn repeatedly before the impact. The gist of their testimony was that Marsha Bender drove in front of the train without reducing speed or looking for its approach.
The only testimony contra to the above was given by Mr. Stevens and Mrs. Gandee. Mr. Stevens, who was driving his pickup truck east on Minnesota Avenue approximately 100 feet behind the Bender car, testified that he did not hear the train whistle until he observed the train about 150 feet from the point of collision.
Mrs. Gandee, who was seated in her bedroom approximately 325 feet east of the crossing looking west toward the track, testified that she watched the train from the time it came into view near Maitland Avenue (some 744 feet south of the point of impact) until it was within 100 to 150 feet of the collision point. She testified that she became alarmed when she did not hear the train sound its horn as it approached the Minnesota Avenue crossing. She further testified that she did not hear the train's horn until she heard it almost simultaneously with the sound of the impact.
The only significant changes in testimony at the second trial were that (a) Marsha Bender had recovered from the amnesia-like condition from which she suffered at the time of the first trial[3], and (b) two additional witnesses, Messrs. Gartside and Culliford, testified that the area adjacent to the Minnesota Avenue crossing was urban and that the Minnesota Avenue crossing was well traveled.
The above described testimony was before the court at the second trial, when it granted defendants' motion for a directed verdict. In his statement to the jury, the learned judge said:
"In the decision of the Supreme Court, that court after setting out the facts substantially as you have heard them, reached the conclusion as follows: `After all is said, it cannot be escaped that the sole proximate cause of [the] accident was driving onto the tracks in front of the on-coming train, without looking, listening or exercising the slightest safety precaution.'" (Plaintiff's Appendix, p. 23.)
*266 It is apparent that the trial judge took the position that, under the doctrine of the "law of the case", this court's opinion in Myers v. Atlantic Coast Line Railroad Company, Fla. 1956, 86 So.2d 792, 796, required him to direct a verdict for the defendants at the second trial unless the evidence presented therein was materially different from that previously before the Supreme Court.[4]
While we agree with the trial judge's belief that the evidence presented at the new trial was "substantially" the same as that presented at the original, we cannot accept his position that the law of the first Myers case is that "the sole proximate cause of [the] accident was [Marsha Bender's] driving * * *."
In the first Myers case we were required to review the following order of the trial judge:
"`The motion for new trial is herein granted on the ground that the verdict for the plaintiff is contrary to the manifest weight of the evidence. The court is of the view that the statutory presumption of negligence of the defendant has been overcome by defendants' evidence, and the burden of showing negligence proximately contributing to the collision must rest on a preponderance of the evidence. The only evidence of negligence of defendants presenting a jury question concerns the conflict in the evidence respecting giving of appropriate warning of the approach of defendants' train. The evidence on this question, while legally sufficient to present a jury question, so preponderates in defendants' favor that the court is of the view that the manifest weight of the evidence in this cause establishes the negligence of the driver of the vehicle involved as the sole proximate cause of the collision, consequently, a verdict for the plaintiff is not approved by the Court and a retrial is ordered. It is the Court's view that this case is controlled by Covington v. Seaboard A.L. Ry. Co., 99 Fla. 1102, 128 So. 426. Being of this view, no other grounds assigned in motion for new trial are considered.'" (Emphasis supplied.)
In our opinion affirming the above order, we made three basic points:
1. This court is committed to the doctrine that where the trial court grants a new trial on the ground that the verdict is contrary to the manifest weight of the evidence his decision will not be overthrown absent a clear showing of abuse of discretion.
2. The evidence in this case amply supports the trial court's finding that the sole proximate cause of the accident was the negligence of Marsha Bender.
3. This case is not materially different from McAllister v. Tucker, Fla., 88 So.2d 526, and our discussion of that case forecloses most of the points raised herein.[5]
While admitting that our holding discussed all three points, we are of the opinion that our decision turned upon a finding that the trial judge had not abused his discretion in granting a motion for a *267 new trial. The other two aspects were merely ancillary and nonessential gratuitous statements designed to show why there was no abuse and, as such, were obiter dicta and not a part of the "law of the case."[6]
As an additional pillar supporting this position, it must be remembered that the trial judge, in his new trial order, found that the evidence on the question regarding the railroad's giving or failure to give appropriate warning of the approach of the train was "legally sufficient to present a jury question". His holding on this subject is part and parcel of the law of the case.[7]
Further, although the evidence presented at the second trial was substantially similar to that presented at the first, the plaintiff's case was stronger the second time because of Marsha Bender's expanded testimony, the new testimony of Messrs. Gartside and Culliford, and the fact that Mrs. Gandee's testimony was corroborated by her husband.
With the above facts as a background, and keeping in mind that this is a comparative negligence case,[8] we believe the trial judge erred in directing a verdict for the defendants. When considered in the light of the rule that the prime question on appeal from an order granting a motion for directed verdict, made after all the evidence is whether there was any evidence on which the jury could lawfully have found a verdict for the plaintiff,[9] there was evidence on the issue of the warning sounded by the train which was conflicting, thus requiring this issue be submitted to the jury and not passed on by the court as a matter of law.[10]
This case is reversed and remanded for a new trial.
TERRELL, C.J., and THOMAS, ROBERTS and O'CONNELL, JJ., concur.
NOTES
[1] Myers v. Atlantic Coast Line Railroad Company, Fla. 1956, 86 So.2d 792.
[2] Although the testimony is not in dispute, there appears to be a difference of opinion about the effect of the testimony on the precautions exercised by Marsha Bender as she approached the crossing and whether the train's speed of 43 MPH was reasonable in view of the crossing's location within the city limits of Winter Park and the nature of the area adjacent to it.
[3] At the first trial Marsha Bender's testimony was largely limited to stating that she had no remembrance of anything about the accident itself; that, in fact she could remember nothing from prior to her leaving school on the day of the accident until she regained consciousness in the hospital after the accident. At the second trial some four years later she testified that her prior failure to remember was caused by an amnesia-like condition and that over the years she remembered more and more about the day of the accident and that she could now remember up to just prior to the collision. She testified that she did not hear a train horn or bell and that, although she looked both right and left upon approaching the track, she did not see the train. She maintained that the scarf over her head did not impair her sight or hearing. She testified "I didn't turn my head at an angle, but I didn't keep my head straight ahead. I could have turned a little bit and my eyes could see over to here. * * *". "You can see 120 degrees from the periphrasis [sic] of you[r] eye without turning your head and I could see without turning my head all the expanse on the right." Finally she testified that her last recollection prior to the accident was that she heard a rumbling noise.
[4] The general rule is that when an appellate court passes upon a question and remands the case for further proceedings, the questions there settled become the "law of the case" upon subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal. 3 Am.Jur., Appeal and Error, § 985, p. 541; 2 Fla.Jur., Appeals, § 404, p. 656.
[5] It is significant to note that the original opinion in the McAllister case, supra, was, on second petition for rehearing, reversed with instructions to reinstate and affirm the jury verdict. In so reversing it was the majority's view that the issue of negligence should have been decided by the jury. The modified opinion will be found at Fla. 1957, 93 So.2d 83.
[6] The dictum of the reviewing court is not within the rule of the law of the case and is, therefore, not conclusive on a subsequent appeal. State v. Florida State Improvement Commission, Fla. 1952, 60 So.2d 747. See also 2 Fla.Words and Phrases, p. 531, and 3 Am.Jur., Appeal and Error, § 946, p. 551.
[7] "The general rule as to the law of the case applies with regard to questions as to the sufficiency of the evidence; and when the case comes up for review a second time and the evidence is substantially the same, the former decision is conclusive. Thus, a ruling that the evidence on a particular issue was sufficient to go to the jury is conclusive on a second appeal, where the evidence at the second trial was substantially the same as that offered at the first. * * *." 3 Am.Jur., Appeal and Error, § 1000, p. 553. (Emphasis supplied.)
[8] See Florida Statutes (1957) Sections 768.05 and 768.06, F.S.A.
[9] 2 Fla.Jur.Appeals, § 302, p. 552; Red Top Cab & Baggage Co. for Use and Benefit of Fontaine v. Dorner, 1947, 159 Fla. 538, 32 So.2d 321; Teare v. Local Union No. 295, Fla. 1957, 98 So.2d 79.
[10] Cadore v. Karp, Fla. 1957, 91 So.2d 806.