• KELLY, CLIFTON M., Associate Judge.
The appellant was the defendant in an action for damages brought against him by Bruce Ruark, a minor, by his father and next friend, Preston Ruark, and by Preston Ruark, individually. The complaint, in substance, alleged that the defendant so negligently and carelessly operated his automobile as to cause it to seriously injure the plaintiff, Bruce Ruark, a ten year old bicyclist. The defendant denied that he was negligent and set forth the affirmative defense of contributory negligence on the part of the minor plaintiff.
The first trial of the case ended with a hung jury. The second trial resulted in a verdict for defendant.
The evidence tended to show that at about 3:00 P. M. on July 1, 1961, the defendant was driving his 1960 Pontiac Sedan in a northerly direction on Coconut Avenue, a residential area, in Sarasota, Florida. For several hundred feet prior to his reaching the address of 1824 Coconut Avenue, there were no obstructions to the defendant’s view of the street, or of the area between the easterly part of the sidewalk and the street, except an occasional tree. The shapes of the trees were such that the defendant’s view was not obstructed to any appreciable degree because of them. The defendant’s car struck the ten year old boy and the bicycle he was riding almost at the same instant that the defendant first saw him. As a result of the accident the minor plaintiff suffered severe injuries.
The defendant contended that he did not observe the child until about the same instant his car struck him and when he did see him he immediately tried to stop his car. *614 When the defendant on direct examination was asked the question: “All right, sir. As you approached the place where the accident occurred, would you, in your own words, tell the jury what you observed and what happened at that time?” His answer was, “Well, I was driving north to [sic] Coconut and all of a sudden Bruce was in front of me on a bicycle and I hit him. He was just there, I didn’t know, I couldn’t swear where he came from or anything, and as soon as I saw him I tried to stop and everything just happened so quick that there was no way in the world I could have kept from hitting him.” The defendant maintained that his speed was between 20-25 miles per hour. The evidence is undisputed that the skidmarks on the road resulting from the defendant’s application of his brakes measured between 47 and 48 feet. Mr. Clarence S. Bruce, a well-known traffic analyst from Fort Myers, Florida, who testified for the plaintiff, said in his opinion the skidmarks would indicate that the defendant’s speed was 31 miles per hour when he struck the child. The speed limit on Coconut Avenue was 25 miles per hour.
The minor plaintiff maintained that he walked his bicycle down the driveway from the Ponleit home, where he had been visiting, to the sidewalk, looked both ways, got on his bicycle, looked again and then went out into the street. (The Ponleit home was on the defendant’s right as he proceeded north). In more detail, the plaintiff stated that when he looked the first time he saw the defendant’s car approaching when it was more than a block away; that after he got on his bike and looked again the car was a little closer; and that he then went straight into the street from the driveway and was hit by the defendant’s car in about the center of the street. He admitted that after he had looked twice he rode out into the street without again looking to his left and that he didn’t know where the defendant’s car was when he went into the street, because he didn’t see it.
The distance from the west side of the sidewalk to the street was 8 feet, with the sidewalk being 5 feet wide. The street was 32 feet wide. There was a sharp dispute as to how far out into the street the boy was when he was struck down. The skid marks began 7j/£ feet from the easterly curb in the right lane going north and there was an indentation with the paint broken on the top of the left fender of the defendant’s car in front of the sideview mirror. The car was 6.73 feet wide. So it clearly appears that the minor plaintiff was about in the center of the street when he was hit, which was in accordance with his testimony.
Upon motion by the plaintiffs the trial judge granted a new trial. The judge’s order for the new trial stated:
“* * * [T]he Court being of the opinion that the verdict of the Jury does not accord with the manifest weight of the evidence and the substantial justice of the cause demands that a new trial be granted; the Court is of the further opinion that the Jury should not have been instructed on the doctrine of sudden emergency because the only reasonable interpretation of the evidence clearly establishes that the Defendant was never confronted with an emergency; furthermore, the only reasonable interpretation of the evidence establishes that the Defendant failed to see Plaintiff until the moment of impact, although the evidence shows that Plaintiff was in view for a period of time prior to impact, and that such failure to observe the Plaintiff would be negligence on the part of the Defendant causing or contributing to such emergency; the Court is of the further opinion that the giving of such charge to the Jury probably changed the results of the trial as such charge would tend to confuse or mislead the Jury; * *
The only questions to be considered by this Court are those involved in the order granting the new trial; that is whether it was error to instruct the jury on the doctrine of sudden emergency and *615 whether the trial court erred in granting plaintiffs a new trial because the verdict did not accord with the manifest weight of the evidence and the substantial justice of the cause. It is more than well established that trial courts are allowed a very broad and liberal discretion in granting a new trial; that there is a presumption of correctness in favor of an order by the trial judge in allowing a new trial; and that a strong showing that there was a clear abuse of discretion is required to reverse such an order. Cloud v. Fallis, Fla.1959, 110 So.2d 669; Pyms Real Estate v. Meranda, Fla.1957, 98 So.2d 341; Florida Publishing Co. v. Copeland, Fla.1956, 89 So.2d 18; Myers v. Atlantic Coast Line Railroad Co., Fla.1956, 86 So.2d 792; Turner v. Frey, Fla.1955, 81 So.2d 721; Geffrey v. Langston Const. Co., Fla.1952, 58 So.2d 698; Poindexter v. Seaboard Air Line Railroad Co., Fla.1951, 56 So.2d 905; and Dent v. Margaret Ann Super Markets, Inc., Fla.1951, 52 So.2d 130.
The requisite factual requirements to support an instruction on the sudden emergency doctrine, found in an annotation appearing in 80 A.L.R.2d, 15-17, are that:
“[T]he evidence should be sufficient to support a finding (1) that the claimed emergency actually or apparently existed; (2) that the perilous situation was not created or contributed to by the person confronted, or, as held or stated in many cases, by the tortious act or conduct of such person; (3) that alternative courses of action in meeting the emergency were open to such person, or that there was an opportunity to take some action to avert the threatened casualty; and (4) that the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or a similar situation. Where there is evidence sufficient to support a finding as to the existence of such requisites, and procedural requirements have been complied with, the instruction should, of course, be given.”
It is very questionable if the evidence was sufficient to show the existence of the necessary factual requisites to justify the trial court in giving an instruction on sudden emergency; but considering the completeness and totality of the trial judge’s instructions to the jury, our opinion is that such instruction was not prejudicial to the plaintiff’s case. Stiles v. Calvetto, Fla.App.2, 1962, 137 So.2d 17; Baston v. Shelton, 1943, 152 Fla. 879, 13 So.2d 453; Winthrop v. Carinhas, 1940, 142 Fla. 588, 195 So. 399; and Tampa Electric Co. v. Jandreau, 1927, 93 Fla. 520, 112 So. 558.
The instruction which was given to the jurors on sudden emergency consisted of:
“You are further instructed that the law recognizes that motorists are often confronted by and must act in emergencies. But, [if] a motorist is suddenly confronted with an emergency not due to any negligence on his part if he acts as a reasonably prudent person under the circumstances would act then he cannot be charged with negligence because in such emergency he may not have done that which would have prevented the accident. It is not a question of what was the safest, the best thing to do, the question is what, under the circumstances, would a reasonably cautious and prudent person have done. * * * ”
Some of the other instructions, the effect of which was to minimize or make harmless the giving of this particular instruction, were as follows:
“ * * * Greater care is required of one driving within a town or city than upon the ordinary public roads where there are no crowded conditions. Therefore, if you believe from all the evidence in this case that the defendant was driving or operating his automobile at the time of the accident, negligently and without ordinary care, *616 taking into consideration all of the facts and circumstances surrounding the accident and as a proximate result of such want of ordinary care, inflicted upon the Plaintiff, Bruce Ruark, the injuries complained of, the verdict should be for the plaintiff.
;|t * >}i ¡it % Hi
“I charge you that it is a matter of common knowledge that small children are erratic and unpredictable and that they are liable to take off at any time in any direction with no concern for their own safety. The drivers of motor vehicles are charged with the knowledge of their behavior and are expected to govern themselves accordingly when driving about residential communities and other places inhabited by or frequented by children. Motorists are expected to anticipate children about such places. Therefore, in cases where their safety is involved, more care is demanded than for the adult, and all persons who are chargeable with the duty of care and caution towards them, must consider them and must take precautions accordingly.
* * * * * *
“I charge you that it is the responsibility of the operator of a motor vehicle to keep a proper lookout ahead at all times and act upon what he sees. The law will not permit the driver of a vehicle to say that he did not see an object ahead of him or that he did not appreciate fully the situation to his front and therefore avoid liability if by the exercise of ordinary care, the driver could have seen the object ahead of him or could have appreciated the situation developing there and have avoided injury; so if you find that the Defendant in the case negligently failed to maintain a proper lookout ahead and that such failure was the sole proximate cause of the resulting accident, then your verdict should be for the Plaintiff.”
Another instruction given to the jurors was as follows:
“I further charge you that in determining whether the Defendant is liable in the case you are to take into consideration, to the extent that you find it applicable, the doctrine of last clear chance. A simple statement of this doctrine is as follows: The person who has a clear opportunity of avoiding an accident is considered to be the sole proximate cause of the accident notwithstanding the negligence of another in placing himself in a position of peril. The application of this doctrine is such that if you find that the Plaintiff, Bruce Ruark, was placed in a position of peril from which he could not readily extricate himself, and even though he placed himself in a position of peril because of negligence on his part, if you find that the Defendant, Robert Tye, had the last clear chance and opportunity to avoid the accident and recognized, or in the exercise of reasonable care, should have recognized the peril of the Plaintiff , Bruce Ruark, then the negligence of the Defendant, if any, would be considered the sole proximate cause of the injuries, if any, sustained by the Plaintiff, Bruce Ruark. The last clear chance theory of law is not limited to actual knowledge on the part of every motorist as peril of another, but the operator of an automobile is said to be the sole proximate cause of an accident where he saw or by the exercise of ordinary care, could have seen the peril of another in time to have avoided the accident by taking such steps as an ordinary prudent person would have taken under the circumstances and yet failed to do so.”
We feel that it was the giving of this comprehensive and exhaustive instruction on last clear chance that, if nothing more, erased or made harmless the error of the *617 trial judge in giving an instruction on sudden emergency when by the defendant’s own admission he didn’t see the child until at or about the time he hit him.
Turning now to the trial court’s granting of a new trial because the verdict did not accord with the manifest weight of the evidence and the substantial justice of the cause, we are of the view that the lower court slightly overextended its broad discretion in this respect. The jury could have found and evidently did find that the minor plaintiff was guilty of contributory negligence in riding his bicycle into the street in front of an approaching car which he had observed both before and after he mounted his bicycle in the driveway, but which he failed to see or watch for when he rode out into the street. His mother, Mrs. Virginia Ruarle, testified at the trial as follows with reference to the instructions her son had been given about riding his bicycle in the street:
“Q. Had you given Bruce any instructions about riding his bike out in the street?
“A. Very definitely.
“Q. Instructions about riding the bike down the driveway, down Ponleit’s driveway?
“A. He has been instructed not to drive down anybody’s drive. He has been instructed.
“Q. Did you instruct him if he saw cars coming he should not go in the street?
“A. He was to judge his distance.
“Q. Did you tell him to watch for cars?
“A. I told him very definitely to watch out for cars and not to ride out directly into the path of the automobile.”
The instruction to the jury on contributory negligence consisted of:
“I charge you that it is a matter of common knowledge that age alone is not sufficient to determine whether or not a child is capable of appreciating danger and exercising care for his own safety or that if he failed to do so, he may be held guilty of contributory negligence which will bar his recovery. In determining whether or not a child is guilty of contributory negligence, in addition to his age, much depends upon the mental development, previous training and experience. Therefore, if you find from the evidence that by reason of his mental intelligence, experience, alertness and training, that Bruce Ruark was capable of appreciating danger and exercising care for his own safety and failed to do so, that such failure contributed in any appreciable amount to the accident, then he cannot recover in his action.”
In addition to the matter of the minor plaintiff riding his bicycle out into the street in front of a car which he had just previously observed approaching directly from his left, the jury was instructed on two city ordinances of the City of Sarasota that concerned the operation of bicycles. The instructions were:
“I further instruct you that another City ordinance is 186.0161 and it reads as follows: ‘The operator of a bicycle entering or emerging from an alley, driveway or building shall upon approaching a walk or the sidewalk area extending across any alleyway or driveway, yield the right-of-way to all pedestrians approaching on the sidewalk or sidewalk area, and upon entering the roadway shall yield the right-of-way to all vehicles approaching said roadway.’
“The next one, 186.0156,1 shall read: ‘Every person riding a bicycle upon the street shall be subject to all of *618 the duties applicable to the driver of a vehicle by the order of this municipality except as to special sections relating exclusively to bicycles and except as to those provisions of this ordinance which by their nature, have no application.’ ”
So it is readily seen that the jury under the facts of the case and the Court’s instructions could have very easily arrived at the conclusion that the minor plaintiff was guilty of contributory negligence even though it might have been possible for the defendant to have seen the boy as he rode his bicycle from the sidewalk into the street.
Accordingly, the order appealed from is reversed and the cause is remanded for the entry of a judgment upon the verdict. ;
Reversed and remanded.
SHANNON, Acting C. J., and AN- ' DREWS, J., concur.