375 So.2d 1120 (1979)
SPRINGFIELD LIFE INSURANCE COMPANY, Appellant,
v.
Arthur E. EDWARDS, Appellee.
No. 78-2101.
District Court of Appeal of Florida, Third District.
October 2, 1979.
Rehearing Denied November 9, 1979.
*1121 Magill, Sevier & Reid and Kevin P. O'Connor, Miami, for appellant.
Joe N. Unger, Robert M. Sussman, Miami, for appellee.
Before PEARSON, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The defendant below, Springfield Life Insurance Company, appeals from an order granting a new trial to the plaintiff-appellee after a jury verdict for Springfield in an action on a disability policy. We reverse for judgment to be entered on the verdict because the record does not support the grounds assigned by the trial judge as the basis for the new trial order.
The hotly disputed jury trial primarily centered upon the issue of whether Edwards, who was a letter carrier when he was accidently injured on the job, was "totally disabled" and was thus entitled to benefits under the policy definition which stated that
"[T]he Insured will be deemed to be totally disabled if he is completely unable to engage in gainful occupation for which he is reasonably fitted by education, training and experience."
In addition to the presentation of the testimony of physicians which tended to show that the plaintiff was not medically disabled, Springfield sought to establish that Edwards, by virtue of his ownership of several rental properties and his special training in the field, was able to engage in the alternative occupation of real estate management. *1122 On this issue, the trial record shows that the court severely and properly restricted the cross-examination of the plaintiff to the pertinent question of whether Edwards owned any "rental properties" and used or could use his expertise in their management.[1] The jury was not made aware even of the extent of these holdings and there seems to have been no other reference in the testimony to his wealth or poverty.[2] *1123 Nevertheless, the trial court set aside the jury verdict for the defendant and ordered a new trial upon the stated grounds:
1. That the Defendant put forth to the jury, directly and indirectly, evidence of the Plaintiff's wealth and financial status through Defendant counsel's inquiry into various properties owned, purchased and rented by the Plaintiff; that said inquiry was made over Plaintiff's timely objections and sustaining of them by the Court, and the Court furthermore instructing Defendant's counsel to preclude inquiry into Plaintiff's ownership of property and his wealth and said instructions being ignored with Defendant counsel continuing to inquire into precluded matters.
2. That Defendant's inquiry and the Plaintiff's immediate responses thereto concerning matters of his ownership of property  even though the Defendant's questions were timely objected to  was so prejudicial as to improperly influence the jury, the Court finding that the wealth of the Plaintiff or his financial status elicited either, directly or indirectly, is not admissable [sic] in that the rich and poor stand alike in Courts of Justice and neither the wealth of the one nor the poverty of the other shall be permitted to affect the administration of the law; furthermore, the evidence as to Plaintiff's wealth and ownership of property was so highly prejudicial so as to preclude the Plaintiff herein from having a fair and impartial trial.
3. That a curative instruction could not erase the impact of the questioning and answers elicited therefrom which delved into Plaintiff's wealth and financial status and that the verdict therefor rendered by the jury is against the manifest weight of the evidence and that in addition thereto, Plaintiff's Motion for Mistrial should have been granted when timely requested.
This court's statement in Bishop v. Watson, 367 So.2d 1073, 1077 (Fla.3d DCA 1979) is squarely applicable to the appellate review of this order:
The broad discretion of a judge in granting a new trial becomes limited and is drained of force when the question of the propriety of the granting of the new trial is one of law, and relates to the legal sufficiency of the ground or reason for granting the new trial. Boutwell v. Bishop, 194 So.2d 3, 6 (Fla.1st DCA 1967); National Western Life Ins. Co. v. Watters, 216 So.2d 485 (Fla.3d DCA 1968); City of Hollywood v. Jarkesy, 343 So.2d 886 (Fla.4th DCA 1977).
In this case, we are convinced that the trial judge's order is erroneous as a matter of law. The record demonstrates,[3] contrary to the statements in the order, that defense counsel did not violate any of the court's instructions, that the issue of the plaintiff's "wealth" was not per se injected into the trial, and that the reference to the plaintiff's ownership of property was properly admitted as directly relevant to the basic issue in the case  his eligibility for benefits under the policy in question. That this reference may also tangentially have tended to reveal Edwards' general financial condition would not have justified its exclusion from evidence. See Johnson v. State, 130 So.2d 599 (Fla. 1961); City of Miami Beach v. New Floridian Hotel, Inc., 324 So.2d 715, 717 (Fla.3d DCA 1976); 13 Fla.Jur., Evidence, Section 112 (1957). Even more clearly, there was no error in the trial court's failure to grant the plaintiff's motion for a *1124 mistrial on this ground. Since these rulings were therefore correct when made, they cannot sustain the subsequent award of a new trial any more than they would have permitted reversal on appeal. Bishop v. Watson, supra.[4]
In the course of its order, the trial court also made a boiler plate reference to the conclusion that the verdict was "against the manifest weight of the evidence." At the oral argument, the appellee conceded, and we agree, that this recitation of the "magic words" affords no support for the order beyond the specific grounds relied upon. This is the case both because the order does not contain, as required, any articulated reasons which support that conclusion, Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla. 1978), and because, on the merits, it simply cannot be said that the jury's resolution of the disputed issues in the case was in fact contrary to the weight of the evidence before it. Travelers Indemnity Co. v. Hicks, 363 So.2d 628 (Fla.3d DCA 1978); see Tye v. Ruark, 179 So.2d 612 (Fla.2d DCA 1965).
The plaintiff forcefully argues, relying on Castlewood International Corp. v. LaFleur, 322 So.2d 520 (Fla. 1975) and Cloud v. Fallis, 110 So.2d 669 (Fla. 1959), that we may not properly interfere with an exercise of the trial court's discretion in concluding, based essentially on what the appellee calls a "gut reaction," that the plaintiff did not receive a fair trial. We entirely disagree. The supreme court's decisions in Wackenhut Corp. v. Canty, supra, Laskey v. Smith, 239 So.2d 13 (Fla. 1970), and Hodge v. Jacksonville Terminal Co., 234 So.2d 645 (Fla. 1970) have made it clear that jury verdicts are not to be set aside merely because of the disturbed condition of a trial judge's viscera. An order granting a new trial must be "supported by the record ... or by findings reasonably amenable to judicial review," which establish the legal propriety of that action. Laskey v. Smith, supra, at 239 So.2d 13. Since our review of the reasons assigned in the order reveals they are not supported by the record as applied to pertinent principles of law, an abuse of discretion has been demonstrated. The order under review is therefor reversed and the cause is remanded with directions to enter judgment for the defendant in accordance with the verdict of the jury.
Reversed and remanded.
PEARSON, Judge, dissenting.
I would affirm the order granting the appellee-insured a new trial because I believe that the appellant-insuror has not met the heavy burden that rests upon a party who seeks to overturn such a ruling. See Castlewood International Corporation v. LaFleur, 322 So.2d 520 (Fla. 1975). If we apply to this record the test suggested by the concurring opinion in Castlewood, it seems to me that we would have to say that reasonable men might differ over the question of whether the injection into testimony and argument of the concept that the plaintiff was a man of such wealth that he did not need the insurance payment was enough to deprive him of a fair trial.
The later case of Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978), does not change the rule of Cloud v. Fallis, 110 So.2d 669 (Fla. 1959), and Castlewood International Corporation v. LaFleur, supra. The trial judge in the present case has made an earnest attempt to comply with the Wackenhut rule requiring him to give his reasons that the verdict was against the manifest weight of the evidence and was influenced by considerations outside the record. The trial judge did not support the decision by "book and page" as this court has done upon its reading of the transcript, but he did give his reasons. There is substance to those reasons, and there is much in the record to support his decision.
Accordingly, inasmuch as the trial judge was there and we were not, I would affirm.
NOTES
[1] The record shows that the following occurred during cross-examination of the plaintiff:

Q I understood from your testimony today that you have never used any of the real estate training that you received at Lindsey Hopkins?
A Yes, sir.
Q In 1971, how many homes did you own in Dade County?
MR. SUSSMAN [plaintiff's counsel]: Excuse me, Judge, may we approach the Bench, please?
(Whereupon, counsel approached the Bench, after which the following proceedings were had:)
MR. SUSSMAN: Judge, comes now the Plaintiff and moves this Court for a mistrial in this case, number one, in that he has no right to ask the question, that type of question, in this case, as to how many homes he owns or did own because that specifically goes as to the finances that he has.
* * * * * *
MR. O'CONNOR [defense counsel]: It goes as to the issue of whether he is using his real estate training activities or not, Judge.
THE COURT: I don't think that you can go into his personal wealth.
* * * * * *
THE COURT: You can only get into the fact as to the various homes, say, six or ten; and if he has had real estate training to handle the closings.
MR. O'CONNOR: I am not finished yet, Counsellor.
One question that I would like to ask, Judge, is has he or did he use his real estate training.
THE COURT: That's it; that is the extent as to, first, what he used his training specifically for; you can ask him as to his real estate training, first; and if he has used the training that he received. ...
MR. O'CONNOR: As to his various homes?
THE COURT: That might have a bearing as to his wealth or lack of wealth at issue.
MR. O'CONNOR: Only as to his wealth, Judge?
THE COURT: As to the real estate training in the buying and selling of houses. That's all.
MR. O'CONNOR: Can I ask him whether he used it to rent them out?
THE COURT: Or rent; did he use his training, his real estate training  try and show or develop the activity that he engaged in at that time. If he used real estate management in his rental properties.
MR. O'CONNOR: All right, Judge.
THE COURT: I don't want to know as to how many homes he did own, and I don't think that the number has anything to do with it.
MR. O'CONNOR: Just also as to the rent of the homes that might have produced income, Judge?
THE COURT: As to his personal wealth or not, no.
BY MR. O'CONNOR:
Q Mr. Edwards, back in 1970 and '71, sir, did you use  first of all, did you have or own rental properties?
MR. SUSSMAN: Excuse me, your Honor, but I thought that your Honor just ruled on that.
THE COURT: I explained it very clearly and concisely as to what you would be asking him.
I said to take and see if you can show his ability to make an income first.
Let us proceed.
MR. O'CONNOR: I thought that I was abiding by your Honor's ruling. I'll ask the question again, Judge.
BY MR. O'CONNOR:
Q In 1970 and 1971, sir, did you own rental properties?
A May I answer when I purchased the properties?
Q Well, when?
* * * * * *
Q I'll give you the question again, sir.
In 1970 or 1971, or to go from 1970 to the present time, have you owned any rental properties, yes or no?
A Yes, sir.
THE COURT: All right, next question.
BY MR. O'CONNOR:
Q Have you used any of the background and experience that you obtained for the management of those rental properties?
A No, sir, I didn't.
Q Why not, sir.
A Because my wife takes care of them.
Q Your testimony is that the real estate training that you had back in Lindsey Hopkins has no connection whatsoever with your rental holdings?
A I am not saying that. They don't give me any knowledge of how to purchase; but I do know how to buy and sell property.
Q But you use that knowledge to purchase homes that you actually rent out?
A Same as you could do.
THE COURT: All right, that's enough at this point.
[2] In final argument, plaintiff's counsel, over the defendant's objection, argued that Edwards would not "give up his working life for $200 a month" which he received in government disability pay. In reply, defense counsel argued, referring to "testimony about real estate investments," that the plaintiff obviously had other sources of income. The plaintiff's contention before this court that this portion of the argument supports the new trial order may not be accepted since (a) the issue was not referred to in the order itself; (b) the statement was in proper and justified rebuttal to plaintiff's argument and (c) there was no objection to the argument at the time it was made. See Bishop v. Watson, 367 So.2d 1073 (Fla.3d DCA 1979).
[3] See note 1, supra.
[4] It should be emphasized that the trial judge did not find that the jury had been improperly "influenced by considerations outside the record," Laskey v. Smith, supra, but rather by evidence and statements concerning the plaintiff's wealth which had been, he thought erroneously, inserted into it.